VIDAL RODRÍGUEZ, demandante y recurrente, *v.* CARIBE HILTON HOTEL CORP. OF DELAWARE, h/n/c CARIBE HILTON HOTEL, demandada y recurrida.

*Número:* R-64-66          *Resuelto:* 8 de junio de 1967

---

*Ismael Delgado González,* abogado del recurrente; *Roy J. Cohen, William Lespier* y *Herber E. Lugo,* abogados de la recurrida.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Santana Becerra y Dávila.

El Juez Asociado Señor Santana Becerra emitió la opinión del Tribunal.

En 22 de diciembre de 1961 el recurrente interpuso demanda contra la recurrida Caribe Hilton Hotel, reclamándole la cantidad de $3,881 por concepto de salarios dejados de pagar. La Sala sentenciadora en 5 de marzo de 1964 dictó sentencia finalmente declarando sin lugar la reclamación.

El recurrente comenzó a trabajar con la recurrida el 22 de abril de 1957 en un empleo de cocinero, con un sueldo semanal de $43.20 a razón de $1.08 por hora en una semana de 40 horas de trabajo. Trabajaba en una de las cocinas del Hotel como cocinero bajo la supervisión inmediata de otro cocinero a cargo de dicha cocina y de los demás empleados en ella. Como cuestión de funcionamiento interior las cocinas del Hilton tenían distintas categorías, aunque tales categorías no aparecen en los convenios colectivos, ni se fijó en los mismos distinta compensación para cocineros en las diferentes cocinas.

A partir del 13 de marzo de 1958 el recurrente quedó a cargo de la cocina en que trabajaba por traslado que se hiciera del cocinero mayor. Esta persona de nombre Guillermo Ruiz ganaba en esos momentos $92 semanales, a razón de $2.30 la hora. Hacía más de 10 años que trabajaba en el Hotel y había comenzado con un sueldo semanal de $40.00. La diferencia hasta $92 representaba aumentos periódicos por razón de su eficiencia.

Sostiene el recurrente que al aceptar hacerse cargo de la cocina en la cual trabajaba hasta entonces bajo la dirección de Ruiz, se le ofreció por el funcionario jefe de todas las cocinas pagarle el salario de $92 que ganaba Ruiz, a la terminación de un período probatorio de tres meses. Que de no haber sido por ese ofrecimiento, él no hubiera aceptado el empleo.

Para esa fecha regía un convenio colectivo entre las partes que fijaba una compensación mínima para los cocineros de $0.60 la hora. Por convenio colectivo que empezó a regir el 12 de febrero de 1958, se elevó el salario mínimo de los cocineros a $0.82 por hora. Por un tercer convenio colectivo firmado en 29 de julio de 1960, a partir del 28 de julio de 1960 el salario mínimo acordado para los cocineros era de $0.90 la hora, ya base de ciertos ajustes hechos posteriormente, la compensación mínima desde el 28 de julio de 1961 para los cocineros era de $0.94 la hora. Ésta fue la compensación más alta fijada por convenio colectivo en el período que envuelve la reclamación. Se advierte fácilmente que desde el momento mismo en que el recurrente comenzó en su empleo en el año 1957 ganó muy por encima de la compensación mínima más alta convenida colectivamente.

Desde que el recurrente se hizo cargo de la cocina recibió aumentos en su salario, algunas veces por razón de los ajustes a los convenios colectivos, pero la mayoría de las veces por razón de aumentos voluntarios de la gerencia, de $1.08 la hora a $1.30, a $1.63, a $1.75, a $1.875, a $1.95 y hasta $1.995 en julio 28, 1961, para un sueldo semanal de $79.80 comparado con el de $43.20 inicial, en un período de cerca de 4 años. El récord no deja lugar a dudas que la recurrida tenía unas bases de compensación en exceso de los salarios convenidos colectivamente, y que esta compensación respondía a normas de servicio y eficiencia.

Tal como se dilucidó la cuestión litigiosa ante la Sala de instancia, el recurrente pareció descansar en dos supues-

tos para sostener su reclamación: (1) que al llamársele para que se hiciera cargo de la cocina y aceptar él, la recurrida contrató con él y convino en pagarle al terminar un período probatorio de tres meses, el sueldo de $92 que ganaba su antecesor y, (2) que cierta cláusula del convenio colectivo a la cual nos referiremos más adelante, debidamente interpretada, exigía que al recurrente se le pagara el salario ya dicho de Ruiz. La Sala sentenciadora inclusive se manifestó sobre el primer supuesto y llegó a la conclusión de que el Jefe de Cocinas no tenía facultad para contratar salarios sin el consentimiento de sus superiores en la gerencia.

◼ Si el récord nos satisficiera que en realidad hubo tal contrato, probablemente decidiríamos que la gerencia había quedado obligado por las actuaciones de este funcionario que representaba tener poder para ello. Sin embargo el récord no nos convence, en aquel grado de persuasión necesario para así decidirlo, que se contrató con el recurrente el pagarle de inmediato el sueldo de Ruiz. Uno de los varios factores en contrario es que ello no respondía a la norma ordinaria de la recurrida de aumentar salarios y compensar a base de años de servicio y eficiencia demostrada. Es improbable que se le hubiera ofrecido al recurrente de inmediato el mismo salario de Ruiz obtenido por éste después de una eficiencia demostrada durante más de diez años de haber sido empleado. La propia prueba oral en el récord sobre el particular, tomada de la manera más beneficiosa para él, no deja sentado en el récord que se le ofreciera la compensación de $92 sin sujeción a que fuera demostrando su eficiencia en el nuevo trabajo.

◼ En revisión el recurrente parece descansar únicamente en el segundo supuesto.(¹) En el convenio colectivo de

---

(¹) En su alegato, después de referirse al " 'supuesto contrato', cuya validez no estuvo en juego en el curso de la vista ni lo está en el presente recurso", el recurrente dice: "De la demanda en este caso surge claramente el convenio colectivo como *fuente única* de tal reclamación." (Énfasis puesto.)

12 de febrero de 1955 se hizo constar en el Art. IX—Disposiciones Generales—inciso (j), que: "Cuando un empleado pase a desempeñar una *plaza* superior a la suya por más de dos (2) días laborables consecutivos, ya sea temporera o permanentemente, dicho empleado percibirá el jornal de la *plaza* superior; disponiéndose, sin embargo, que las disposiciones de esta cláusula no se aplicarán cuando un empleado pase a desempeñar las labores .de una *plaza* superior porque el empleado de dicha *plaza* superior esté disfrutando de licencia por enfermedad." (Énfasis puesto.)

En el convenio colectivo de 11 de febrero de 1958 se estatuyó en su Art. IX, inciso (j) de manera idéntica a la anterior. En el convenio colectivo de 29 de julio de 1960 redactado en inglés, se dispuso en su Art. VI, Sec. 11: "De desempeñar cualquier empleado los deberes de una *plaza* superior por más de dos (2) días de trabajo consecutivos, ya sea temporera o permanentemente, a dicho empleado se le pagará el salario de la *plaza* superior, mientras desempeñe los deberes de tal plaza superior." (²) (Énfasis puesto.)

La posición del recurrente es que tales disposiciones en los convenios colectivos obligaban a la recurrida a pagarle el sueldo de $92 que devengaba Ruiz al momento en que se hizo cargo de la cocina en reemplazo de aquél. Aceptamos que esto se consideró ser un ascenso. En su alegato el recurrente ha hecho un laudable esfuerzo a la luz de las disposiciones de nuestro Código Civil y de las normas de jurisprudencia que rigen la interpretación de contratos, normas que no creemos sea preciso analizar en este momento, para convencernos que esa debe ser la interpretación correcta de las disposiciones transcritas de los convenios. Con todo y ello no podemos estar de acuerdo. Hay tres convenios colectivos firmados en 1955,

---

(²)"Should any employee perform the duties of a higher position for more than two (2) consecutive working days, whether temporarily or permanently, said employee shall be paid the wage of the higher position, while performing the duties of said higher position."

1958 y 1960. Debemos asumir que los contratantes conocían las prácticas de la gerencia en cuanto a compensar sujeto a servicio eficiente. De haber tenido la intención los contratantes de convenir lo que el recurrente sostiene, tales cláusulas se hubieran redactado en forma distinta. Hubieran hecho referencia al salario que devengaba el empleado ocupante de la plaza superior, y no a la plaza. Los tres convenios colectivos contienen un plan de clasificación del trabajo, y por el salario mínimo que se le fija a cada empleo, es obvio que unos empleos o plazas se consideraban de superior categoría que otros. Es a dicho salario por categorías de empleos contenido en los convenios colectivos que necesariamente tenían que referirse las disposiciones transcritas. Puede notarse que no solamente cubren una incumbencia permanente sino también el desempeño de la plaza superior temporeramente. Con tales disposiciones se quiso evitar que un empleado desempeñara indefinidamente con carácter temporero el empleo de mayor responsabilidad de una plaza superior devengando el salario menor acordado para una plaza inferior. La referida disposición, según aparece en el último convenio colectivo de 1960, expresamente hace constar que el derecho a devengar el salario.de la plaza superior es mientras el empleado esté desempeñando los deberes de este empleo, cláusula ésta que no aparece en los convenios anteriores.

Un análisis de la prueba en el récord y de los tres convenios colectivos aplicables nos lleva al convencimiento que el recurrente no tiene razón en su demanda. *Se dictará sentencia confirmando la de la Sala sentenciadora que declaró la misma sin lugar.*