CARLOS S. QUIRÓS, SECRETARIO DEL TRABAJO Y RECURSOS HUMANOS DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO en representación y para beneficio del obrero BERNARD BRAUN, querellante y recurrido, *v.* I. T. T. WESTERN HEMISPHERE DIRECTORIES, INC., querellada y recurrente.

*Número:* R-78-333      *Resuelto:* 19 de marzo de 1979

538

*McConnell, Valdés, Kelley, Sifre, Griggs & Ruiz-Suria* y *Justa Aponte Pedraza,* abogados de la recurrente; *Ruy N. Delgado Zayas, Francisco Pérez Rivera* y *Edwin A. Hernández Rodríguez,* abogados del recurrido.

El Juez Asociado Señor Díaz Cruz emitió la opinión del Tribunal.

Al cabo de 17 años de servicio con historial impecable, la recurrente I. T. T. Western Hemisphere Directories, Inc. (I. T. T.) despidió a su empleado el recurrido Braun porque éste mintió para obtener, como obtuvo, licencia para ausentarse de su trabajo por ocho días, actuación que la Regla 34 del Reglamento de disciplina de dicha corporación sanciona en primera ofensa con despido. El Secretario del Trabajo y Recursos Humanos, con la facultad que le confiere la Ley Núm. 2 de 17 de octubre de 1961 en su Art. 1° (32 L.P.R.A. sec. 3118) presentó querella ante el Tribunal Superior de San Juan reclamando para el despedido la indemnización que en ausencia de causa justificada para el despido concede la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. secs. 185a–185i). La demandada I T. T. contestó la querella alegando como defensa afirmativa y justificación del despido conducta impropia del empleado "al presentar hechos falsos a los fines de obtener una licencia para ausentarse de su trabajo, todo esto en violación de las normas de disciplina de la Compañía." Se estipuló por las partes que Braun prestó servicios a I. T. T. desde el 6 de julio de 1959 al 2 de agosto de 1976 mediante contrato sin término fijo y que fue despedido en la última fecha por la falta al reglamento que aduce el patrono, y que de prosperar la reclamación el cómputo de la mesada de compensación más la indemnización progresiva por sus años de trabajo arroja un total de $15,887.78. Siguiendo el procedimiento ordenado en el Art. 8 de la Ley de 1976 (29 L.P.R.A. sec. 185h(a)) celebrada la conferencia con antelación al juicio, surgió tan claro en el criterio del juzgador, por encima del conflicto de alegaciones presente en la contienda judicial, la arbitrariedad del despido, que ordenó perentoriamente a la demandada I. T. T. que depositara en Secretaría la compensación total ya computada, acogiéndose la corporación a la alternativa de fianza adecuada para continuar litigando la

cuestión de justa causa. Consecuente con su previa estimación de razón fundada favorable al empleado, el 16 de agosto de 1978 el Tribunal Superior dictó sentencia ordenando a I. T. T. pagar dichos $15,887.78 a su ex-empleado Braun.

Al recurso de revisión del patrono expedimos el auto en 11 octubre de 1978 en disposición de aclarar conceptos frente a los cambios introducidos por legislación en materia de despido ilegal.

I

La "mesada" por despido sin justa causa que en el principio quedó recortada al sueldo devengado, y el de un mes, una quincena o una semana adicional[1] según fuere el plazo acordado para pago de salario, avanzó hacia el correcto significado de su nombre cuando por Ley Núm. 50 de 20 de abril de 1949 se introdujo el concepto de indemnización equivalente al sueldo que correspondería a un mes. Aquella Ley de 1949 era parca en su previsión de remedio expresando su Art. 1 (29 L.P.R.A. sec. 183):

"Todo empleado de comercio, industria o cualquier otro negocio lucrativo, contratado sin tiempo determinado, que fuere despedido de su cargo sin justa causa, tendrá derecho a recibir de su patrono, en adición al sueldo que hubiere devengado, el sueldo correspondiente a un mes por concepto de indemnización."

En su Informe al Gobernador, de agosto de 1959 (Tomo 1, 1959-CDC-001, págs. 135–136, Ed. Equity, 1973), la Comisión de Derechos Civiles de Puerto Rico hizo la siguiente recomendación:

"(a) *Despidos*

Debe revisarse la Ley 50 de 1949 en cuanto permite despidos sin justa causa, si media una compensación de un sueldo mensual. Para reducir la posibilidad de arbitrariedad, sin restringir irrazonablemente la libertad de selección de los patronos, debe activarse la supervisión gubernamental de las determinaciones

---

[1] Art. 1, Ley Núm. 43 de 28 de abril de 1930 pág. 357. *Mir, Suau & Cía.* v. *Corte,* 56 D.P.R. 46, 48 (1940).

de justa causa y, en ausencia de buenas razones, los despidos deben estar sujetos a una compensación mayor. En las empresas donde hay uniones, los convenios generalmente tienen cláusulas que requieren justa causa."

■ La recomendación fue atendida por la Asamblea Legislativa que derogó la Ley de 1949 y en su lugar aprobó la Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. secs. 185a–185i) donde se amplía la base conceptual de la justa causa para el despido, se aumenta la compensación en adición al sueldo devengado, con el sueldo correspondiente a un mes por concepto de indemnización, más una "indemnización progresiva adicional" equivalente al sueldo de una semana por cada año de servicio, computada tomando como base el tipo de salario más alto devengado por el empleado dentro de los tres años que preceden al despido. La nueva Ley tiene un Art. 8 procesal que conserva de la anterior la regla de peso de la prueba en el patrono para probar que el despido estuvo justificado y una disposición sobre consignación o fianza en aseguramiento preventivo de la suma computada para indemnización, de resultar según la prueba que no hubo justa causa.

■ El informe conjunto de las Comisiones de Trabajo y de Derechos Civiles del Senado, que precedió a la aprobación de la Ley de 1976, expresa que "[e]l propósito [de la medida] es darle mayor protección a los trabajadores en situaciones de despido a que se vean expuestos . . ."; establecer la indemnización progresiva por el despido injustificado y hacer *más* restrictivo el concepto de justa causa. Séptima Asamblea Legislativa, Senado, 23 de abril de 1975.

## II

Ordena la citada Ley Núm. 80 de 1976 en su Art. 2 (29 L.P.R.A. sec. 185b):

"Se entenderá por justa causa para el despido de un empleado de un establecimiento:

(a) Que el obrero siga un patrón de conducta impropia o desordenada.

(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento, y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias anticipadas o que prevalecen al ocurrir el despido.

No se considerará despido por justa causa aquél que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento."

La Ley no pretende ni puede, considerada la variedad de circunstancias y normas de los múltiples establecimientos de trabajo, ser un código de conducta conteniendo una lista de faltas claramente definidas y la sanción que corresponde a cada una y en cada instancia, si ha de ser reprimenda, suspensión o despido. Esa es opción del patrono que puede adoptar reglas y reglamentos *razonables*([2]) que estime necesarios para el buen funcionamiento de la empresa. La Ley Núm. 80 no favorece el despido como sanción a la primera falta y así se deduce del uso por el legislador de las voces "patrón" y "reiterada" al concretar la justa causa para

---

([2]) Dispone el Art. 2 de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185b(c)) que se considerará justa causa de despido la violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

el despido en que el obrero (a) siga un patrón de conducta impropia o desordenada, o en (c) la violación reiterada de las reglas y reglamentos del establecimiento. Es de notar, sin embargo, que el citado estatuto, no excluye de la sanción o despido en primera o única ofensa aquella falta cuya intensidad de agravio así lo requiera en protección de la buena marcha de la empresa y la seguridad de las personas que allí laboran. Al efecto, luego de condensar en los seis apartados del (a) al (f) del Art. 2 las causas que justifican el despido, de manera indirecta la ley admite la extrema sanción de despido aun en casos de falta única para la ofensa aislada de todo concepto de reiteración o curso de conducta, si dentro de las circunstancias en que se impone, dicho castigo de separación del empleo no refleja arbitrariedad o capricho del patrono. Dice el párrafo final del citado Art. 2: "No se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento." Luego, con sólo invertir la sintaxis, encontramos que se entenderá por justa causa para el despido la que tiene su origen no ya en el libre arbitrio del patrono, sino en razón vinculada a la ordenada marcha y normal funcionamiento de la empresa. Desviándose aunque de manera cualificada de su premisa esencial de reiteración o persistencia en falta como elemento integrante de justa causa para el despido, la ley considera una sola ofensa o primera falta como tal justa causa si por su gravedad y su potencial de daño pone en riesgo el orden, la seguridad o la eficiencia que constituyen la normalidad operatoria del establecimiento.

Toda vez que la falta única se sanciona con despido sólo por excepción, como dejamos expuesto, toca ahora ponderar si la ofensa aislada del recurrido afectó o planteaba un peligro para el "buen y normal funcionamiento del establecimiento" al punto en que hubiese necesidad de expulsarlo de su trabajo en protección del interés colectivo de patrono y

trabajadores en la vida normal de la empresa. La falta o acto aislado que dé lugar a despido del empleado en primera ofensa ha de ser de tal seriedad o naturaleza que revele una actitud o un detalle de su carácter, tan lesivo a la paz y al buen orden de la empresa, que constituiría imprudencia esperar su reiteración para separarlo del establecimiento. (3) En esta evaluación puede ser punto de referencia el Reglamento sobre disciplina de la recurrente I.T.T. que comprende 47 reglas en que se definen y sancionan otras tantas faltas de conducta, y los correspondientes castigos a la primera, segunda, tercera y hasta cuarta instancia de la misma ofensa. La mayor parte conlleva una reprimenda por primera vez, suspensión sin paga de 3 ó 5 días la segunda y despido la tercera. Algunas admiten dos reprimendas, o una reprimenda y dos suspensiones de empleo y el despido sobreviene en la *cuarta* incidencia. Por ejemplo, la Regla 10 sanciona la "falta de interés o negligencia en el cumplimiento del deber" con dos reprimendas y el despido no llega hasta la tercera ocasión; la Regla 6 sanciona la "suspensión [abandono en el propio local] del trabajo durante horas laborales sin justificación"

(3) El principio de que a tenor con la Ley Núm. 80 de 1976 la regla general para despido basada en "patrón de conducta impropia o desordenada" y "violación reiterada" de reglas y reglamentos del establecimiento, está cualificada por la excepción de una primera falta o acto aislado de intenso agravio, está correctamente formulado a la pág. 10 de las "Guías para la interpretación y aplicación de la Ley Núm. 80 . . . ." preparadas por el Departamento del Trabajo, donde expresa:

"Debe tenerse en cuenta que lo que es conducta impropia y desordenada en un lugar de trabajo no lo es necesariamente en otros lugares de trabajo. En circunstancias especiales, ciertos actos aislados pueden revestir tal seriedad que pueden dar base a un despido justificado, y que pueden poner de manifiesto una clara e indubitable condición de carácter, que por la gravedad de las consecuencias que hayan acarreado o que puedan acarrear, o por revelar, de por sí, una actitud no susceptible a cambio, pone de relieve, desde ese momento, aquella configuración del carácter que el legislador sabiamente exigió, como norma general, que no se dejase depender en su apreciación de un acto aislado del empleado. Así, por ejemplo, el trabajador que agreda a su patrono sin provocación o justificación, de por sí solo, puede dar lugar al despido justificado. Se podrían mencionar otros ejemplos de tales actos, pero lo consideramos innecesario."

con reprimenda y deducción de paga por tiempo no trabajado en la primera y la segunda falta, la tercera conlleva suspensión por 5 días y únicamente si el obrero reitera su conducta una cuarta vez, se le despide; las "ausencias excesivas" conllevan dos reprimendas antes del despido (Regla 13); la negativa a trabajar horas extras en casos de necesidad, sin excusa se castiga con 1 día de suspensión la primera vez, 5 días la segunda y despido en la tercera ofensa (Regla 17); y la "conducta desordenada, peleas y uso de lenguaje obsceno e impropio en los predios de la compañía" tiene suspensiones de 3 y 5 días y despido a la tercera falta. (Regla 19.)

El patrono reclama legitimidad para el despido en primera y única falta de su empleado recurrido en la Regla 34 que provee dicha extrema sanción para el acto(4) de hacer una declaración falsa o fraudulenta en los formularios de solicitud de empleo o en los récords de la compañía. Como hemos visto el recurrido Braun dio una razón falsa para obtener licencia y ausentarse de su trabajo durante ocho días laborables. El tratamiento de pena máxima de despido en primera ofensa que el Reglamento da a su falta no armoniza ni con la tolerancia de las reprimendas y suspensiones provistas para ofensas de mayor trascendencia a que nos hemos referido anteriormente, ni con la intensidad del agravio implícita en las faltas mayores para las que el mismo Reglamento reserva la sanción radical de despido, como la insubordinación, falta de respeto y desobediencia a órdenes de un supervisor (Regla 35); amenazas, conducta obscena o indecente, alteración de la paz y provocación de riñas en los predios de la compañía (Regla 37); vandalismo de la propiedad (Regla 38); falsificación o alteración de informes, nóminas u otros récords de la compañía (Regla 39); hurto de propiedad en perjuicio de la compañía, de otros empleados o del público (Regla 40); obstrucción o reducción deliberada de los servicios de la com-

---

(4) El texto original en inglés dice: "Making false or fraudulent statements on employment applications form or company records."

pañía (Regla 41) ; portación de armas mortíferas en los predios o vehículos del patrono (Regla 43) ; y revelación de información confidencial (Regla 44).

Esta evaluación comparativa de la lista de faltas y sanciones en el Reglamento destaca la desproporción de la medida disciplinaria aplicada por la I. T. T. al recurrido. Por ser la suya falta aislada y no curso de conducta(⁵) para justificar el despido debía demostrarse la incompatibilidad de aquélla con la operación normal del establecimiento. Es evidente que la mentira del empleado fue incidente sin consecuencia apreciable en la normalidad funcional de la empresa, por lo que la sanción de despido en primera ofensa resulta irrazonable y arbitraria. El patrono, sobre quien recae el peso de la prueba cuando opone como defensa la de haber mediado justa causa para el despido, no descargó su obligación(⁶) por insuficiencia básica de la Regla 34 en que descansó su caso. Dicha Regla no satisface la norma de razonabilidad que en el apartado (c) del Art. 2 *supra*, se exige para las reglas y reglamentos del establecimiento, y es por tanto ineficaz.

Es de todo punto inaceptable el argumento del patrono al efecto de que el subterfugio de que se valió su empleado para conseguir unos días de licencia acusa un carácter corrupto que vulnera la confianza(⁷) del patrono en el em-

---

(5) Por no ser la mendacidad hábito del recurrido tampoco invocaba la censura de *La Verdad Sospechosa* (P. A. de Alarcón) :

"¡Mentir, qué vicio tan feo
Qué opuesto a mi natural!"

(6) Ordena el Art. 8 de la Ley de 1976 que en toda acción entablada por un empleado reclamando los beneficios de mesada e indemnización progresiva por despido ilegal, el patrono vendrá obligado a alegar en su contestación a la demanda, los hechos que dieron origen al despido y probar que el mismo estuvo justificado para quedar eximido de satisfacer la indemnización.

(7) Si la mera falta de confianza del patrono en el empleado constituyera causa justificada para el despido, prácticamente sería ilusoria la protección legal que concede la legislación. *Wolf v. Neckwear Corp.*, 80 D.P.R. 537, 541 (1958).

pleado y que lo ocurrido en la privacidad de una oficina va en detrimento de la confianza que a la compañía ha otorgado la clientela a que sirve. Esa sensibilidad moral puritana que condena a un hombre en piramidal inflación de su culpa se derrite ante el hecho probado de que la compañía recurrente, antes de despedir a Braun, le ofreció credenciales de buenas referencias si renunciaba al empleo. De haber aceptado la proposición, la recurrente lo hubiese plantado sin contemplaciones con toda su carga de "corrupción" en otra empresa, y se hubiese economizado la indemnización por despido.

## III

Para el trabajador, partícipe menor en los frutos de la empresa, para quien no hay liquidación de dividendos, ni beneficios, ni intereses acumulados en la digna faena de ganar con su esfuerzo el pan que parte en la mesa con los suyos, para quien el ahorro es ilusión devorada por la estrechez, la indemnización por despido es importante evento de la justicia social debida al hombre como factor de producción. Cuando el desempleo condena a un ser humano y a su familia al hambre o a la indignidad, hay que llegar a límites de exigencia para privarle de la protección que ha ganado acceso a nuestra legislación social. Grave ha de ser una falta para cancelar los modestos auxilios destinados a sostener la familia en la transición a un nuevo empleo sin convertirse en carga del Estado. Cristalina debe ser la justificación que se ofrezca para despedirlo sin este mínimo abono a los años de servicio que representan la inversión de su único haber en la estructura de producción: sus energías, su capacidad física e intelectual durante los años más fecundos, en fin, su salud que declina con el tiempo.

No absolvemos al trabajador, pero rechazamos la extrema severidad y desproporción del castigo.

*La sentencia recurrida será confirmada.*

El Juez Presidente Señor Trías Monge no intervino. El Juez Asociado Señor Negrón García disintió con opinión.

—O—

Opinión disidente del Juez Asociado Señor Negrón García.

San Juan, Puerto Rico, a 19 de marzo de 1979

Disiento. La prueba refleja que Braun faltó a la verdad y mintió para obtener una licencia o autorización para ausentarse de su trabajo durante ocho (8) días laborables. Tal conducta es suficiente para justificar su despido. No logro entender cómo el Tribunal condona dicho comportamiento y lo premia imponiéndole a la recurrente la obligación de satisfacerle la suma de $15,887.78.

## I

Según su Exposición de Motivos, la Ley Núm. 80 es un esfuerzo del Poder Legislativo tendente a proteger ". . . de una forma más efectiva el derecho del obrero puertorriqueño a la tenencia de su empleo . . . mediante unos remedios más justicieros y consustanciales con los daños causados por un despido injustificado . . . ." Su texto, al ser comparado con la antigua Ley de Mesada (Núm. 50 de 20 de abril de 1949; 29 L.P.R.A. secs. 183–185), es uno más amplio y abarcador en muchos extremos, y en otro más preciso. Recoge muchos de los principios de nuestro cuerpo doctrinario jurisprudencial,[1] en particular sobre el concepto de "justa causa".

En cuanto a la controversia de autos, es menester transcribir íntegramente el Art. 2:

---

[1] *Rodríguez* v. *Caribe Hilton Hotel Corp.*, 94 D.P.R. 675 (1967); *Vélez de Reilova* v. *R. Palmer Bros., Inc.*, 94 D.P.R. 175 (1967); *Mercado* v. *Hull Dobbs*, 90 D.P.R. 864 (1964); *Cassasús* v. *Escambrón*, 86 D.P.R. 375 (1962); *Hull Dobbs* v. *Tribunal*, 82 D.P.R. 77 (1961); *Wolf* v. *Neckwear*, 80 D.P.R. 537 (1958); *Mercedes Bus Line, Inc.* v. *Tribunal de Distrito*, 70 D.P.R. 690 (1949); *Blanes* v. *Tribunal*, 69 D.P.R. 113 (1948); y *P.R. Cap & Tires Sales* v. *Tribunal*, 68 D.P.R. 398 (1948).

"Se entenderá por justa causa para el despido de un empleado de un establecimiento:

(a) Que el obrero siga un patrón de conducta impropia o desordenada.

(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.

No se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento." (29 L.P.R.A. sec. 185(b).)

Su lectura refleja que las circunstancias enumeradas justificativas de un despido, son ilustrativas y no exhaustivas. Esta conclusión se deduce de la terminología resultante de su último párrafo, en el sentido de que "no se considerará despido por justa causa aquel que se hace por mero capricho o sin razón relacionada con el buen y normal funcionamiento del establecimiento." El concepto "justa causa" es uno dinámico, que se nutre de múltiples y fluidas situaciones, imposibles de prever.[2] En consecuencia, bajo este principio rector,

---

[2] En las "Guías para la Interpretación y Aplicación de la Ley Núm. 80 aprobada el 30 de mayo de 1976", emitidas por el propio Departamento del Trabajo, se reconoce esta realidad al expresarse:

"En circunstancias especiales, ciertos actos aislados pueden revestir tal seriedad que pueden dar base a un despido justificado, y que pueden

corresponde a los tribunales de justicia evaluar y adjudicar las controversias relativas a veracidad o no en los actos o razones deducidas para sostener una cesantía; las normas estatuidas constituyen unas guías legislativas para dirimir la razonabilidad del despido. Cualquier sugerencia en torno a la exclusión de los foros judiciales en esta materia, plantearía serias interrogantes de índole constitucional.

## II

Como corolario de lo expuesto, no podemos concurrir con la tesis de que la cesantía de Braun fue injustificada, aun tomando en cuenta los diez y siete (17) años de servicio previamente prestados a la recurrente. Este factor—años de servicio—es uno de los diversos elementos de juicio, que en justicia deben ponderarse, pero sin ser determinante o caer en los extremos. Debe sopesarse con la gravedad del comportamiento de Braun. El conocía previamente que la reglamentación prohibiendo hacer declaraciones falsas o fraudulentas en los récords de la compañía, y el abandono del trabajo, eran castigables con el despido.

Más aún, su proceder trascendió el ámbito patronal para llegar al recinto judicial, donde reiteró su mentira. Parafraseando la fórmula legislativa, su despido no lo podemos tachar de "caprichoso o sin relación con el buen y normal funcionamiento del establecimiento." Ello es así, pues la verdad u honestidad, como principio comunitario no es susceptible de reducirse a una simple ecuación matemática de contraste con

poner de manifiesto una clara e indubitable condición de carácter, que por la gravedad de las consecuencias que hayan acarreado o que puedan acarrear, o por revelar, de por sí, una actitud no susceptible a cambio, pone de relieve, desde ese momento, aquella configuración del carácter que el legislador sabiamente exigió, como norma general, que no se dejase depender en su apreciación de un acto aislado del empleado. Así, por ejemplo, el trabajador que agreda a su patrono sin provocación o justificación, de por sí sólo, puede dar lugar al despido justificado. Se podrían mencionar otros ejemplos de tales actos, pero lo consideramos innecesario."

años de servicio. La alta jerarquía atribuida a la verdad en la escala de valores morales y judiciales nos obliga a defenderla, aunque no consigamos hacerla triunfar. Respetuosamente entendemos que el análisis conceptual y forense de la opinión mayoritaria tiene como resultado la adopción de una doctrina, que en holocausto jurídico debilita el respeto mutuo que debe existir en toda relación obrero-patronal.

Revocaría la sentencia.