Opinión de conformidad emitida por el
Juez Asociado Se-ñor Martínez Torres,
a la que se unen el Juez Asociado Señor Rivera Pérez y el Juez Asociado Señor Kolthoff Caraballo.
En este recurso debemos resolver si la implantación del estudio de antigüedad realizado por El Telar, Inc. consti-tuyó el despido constructivo de la Sra. Nilda Figueroa Rivera, compensable al amparo de la Ley Núm. 80 de 30 de mayo de 1976, mejor conocida como la Ley de Despido In-justificado, 29 L.P.R.A. sec. 185a et seq. Este Tribunal re-suelve la interrogante en la negativa, por lo que estoy con-forme con que se revoque la sentencia emitida por el Tribunal de Apelaciones, Región de Guayama. Al proceder así, es importante tomar en cuenta los factores que confi-guran un despido injustificado y los criterios que establece la Ley Núm. 80 como justa causa para despedir empleados debido a un cierre parcial de operaciones.

b-i

Los hechos de este caso no están en controversia. El Telar, Inc. es una corporación que opera diversas tiendas en Puerto Rico. En aspectos de personal esta empresa opera sus tiendas de forma sustancialmente integradas, conforme al Art. 3 de la Ley Núm. 80 (29 L.P.R.A. see. 185c(b)).
La señora Figueroa Rivera comenzó a trabajar para El Telar el 19 de mayo de 1988. En 1997 fue ascendida a ge-rente de la tienda de Guayama Malí. Debido a razones eco-nómicas, El Telar, Inc. comenzó a cerrar varias tiendas, una de las cuales fue la de Guayama Mall. El Telar, Inc. notificó a la señora Figueroa Rivera el cierre de la tienda que hasta entonces dirigía y su traslado a la tienda de *703 Mayagüez. Debido a su traslado, la señora Figueroa Rivera renunció a su trabajo.
El Telar, Inc. realizó un estudio de antigüedad entre sus empleados e identificó que la gerente de la tienda de Ma-yagüez era la empleada con menos antigüedad en la clasi-ficación de Gerente de Tienda. Debido a esto, El Telar, Inc. despidió a la gerente de la tienda de Mayagüez y asignó esta tienda a la señora Figueroa Rivera. Con este proceder, El Telar, Inc. entendió que cumplía con los parámetros es-tablecidos en la Ley Núm. 80 al retener a la gerente de la tienda cerrada (señora Figueroa Rivera) sobre la gerente de menos antigüedad en la empresa.
Por estos hechos, el 20 de octubre de 2006 la señora Figueroa Rivera presentó ante el Tribunal de Primera Ins-tancia una acción por despido injustificado contra El Telar, Inc. En su reclamación, la señora Figueroa Rivera alegó que tiene derecho a la compensación provista por la Ley Núm. 80. La señora Figueroa Rivera sostiene que la actua-ción de El Telar, Inc. constituyó un despido constructivo debido a la distancia entre su residencia y la sucursal a la cual fue asignada en Mayagüez. La recurrida, Figueroa Rivera, argüyó que ante el cierre de la tienda de Guayama Malí procedía ubicarla en la tienda de Guayama Pueblo, a base del principio de antigüedad, pues la gerente de esta tienda tenía menos años trabajando para El Telar, Inc.
Luego de celebrar la conferencia con antelación al juicio y con anuencia de las partes, el Tribunal de Primera Ins-tancia concluyó que la controversia se reducía a una inter-pretación de derecho. El foro primario determinó los he-chos siguientes: (1) El Telar, Inc. cerró varias tiendas por factores económicos, entre las cuales se encontraba la que ubica en Guayama Malí, mientras se mantenían abiertas las tiendas de Guayama Pueblo, Juana Díaz “y otras más cerca [en relación con la tienda de Mayagüez y la residen-cia de la señora Figueroa Rivera] ... aunque estaba proyec-tado el cierre de más tiendas”. Sentencia del Tribunal de *704 Primera Instancia, pág. 2, Apéndice, pág. 13. (2) El proce-dimiento de antigüedad implantado por El Telar, Inc. iden-tificó a la gerente de la tienda de Mayagüez como la de menor antigüedad en su clasificación y le asignó esta plaza a la gerente de la tienda cerrada (la señora Figueroa Rivera); igual se hizo con las demás posiciones de la empresa. (3) La gerente de la tienda en Mayagüez era la empleada en esta clasificación con menos antigüedad en la empresa. (4) La gerente de la tienda de Guayama Pueblo (que se mantenía abierta) tenía menos años en la empresa que la señora Figueroa Rivera.
El Tribunal de Primera Instancia estimó que “[e]n el caso de autos no estamos ante una actuación ejercida por mero capricho del patrón o sin razón relacionada con el buen y normal funcionamiento del establecimiento”. Sen-tencia del Tribunal de Primera Instancia, pág. 4, Apéndice, pág. 15. No obstante, el foro primario concluyó que la implementation del estudio de antigüedad establecido por El Telar tuvo el efecto de que “empleados en la misma catego-ría con mucho menos tiempo en la empresa queden ubica-dos en una mejor plaza que los de mayor antigüedad”. Id., pág. 5, Apéndice, pág. 16. Con este razonamiento, el tribunal coligió que la actuación del patrono tornó oneroso el ambiente de trabajo de la señora Figueroa Rivera y declaró “con lugar” la reclamación al amparo de la Ley Núm. 80.
Ante este dictamen, El Telar, Inc. acudió al Tribunal de Apelaciones. Este último confirmó la sentencia recurrida, ya que El Telar, Inc. “no permitió que la [señora Figueroa Rivera] ocupara la posición de gerente en la tienda de Gua-yama Pueblo, cuando la gerente en dicha tienda tiene me-nor antigüedad que ella ...”. Sentencia del Tribunal de Apelaciones, pág. 7, Apéndice, pág. 9. El tribunal entendió que el traslado ordenado era una condición onerosa de tra-bajo para la señora Figueroa Rivera lo que constituyó un despido constructivo. Al igual que el Tribunal de Primera Instancia, el Tribunal de Apelaciones razonó que “el des- *705 pido constructivo ... fue provocado por el plan de antigüe-dad de El Telar, por lo cual procede la demanda instada por despido injustificado”. Id.
Tnconforme con esta determinación, El Telar, Inc. acude a este Foro y alega que los tribunales inferiores erraron en su proceder. En síntesis, El Telar, Inc. sostiene que su ac-tuación no constituyó un despido injustificado según la Ley Núm. 80. El 20 de marzo de 2009 expedimos el auto de certiorari y el recurso quedó sometido en sus méritos el 2 de septiembre de 2009.
II
Para disponer de este recurso es preciso determinar si el proceso seguido por El Telar, Inc. para delimitar los dere-chos de sus empleados a base de su antigüedad, que con-cluyó con el traslado de la señora Figueroa Rivera, confi-guró un despido injustificado al amparo de la Ley Núm. 80.
La Ley Núm. 80 concede a los empleados el derecho a recibir una indemnización en casos en que sean despedidos de su cargo sin justa causa. Véanse: Jusino et als. v. Walgreens, 155 D.P.R. 560 (2001); Díaz v. Wyndham Hotel Corp., 155 D.P.R. 364 (2001); Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178 (1998); Piñeiro v. Int’l Air Serv. of P.R., Inc., 140 D.P.R. 343 (1996).
El propósito de esta medida es otorgar un derecho más efectivo y justiciero a los obreros que sufren los daños de un despido injustificado. Exposición de Motivos de la Ley Núm. 80. De una lectura de la Ley Núm. 80 y de su Expo-sición de Motivos se puede apreciar que la intención de la Asamblea Legislativa fue sancionar y disuadir el despido de un empleado sin justa causa. Ahora bien, no se enten-derá como una causa injustificada las movidas de personal “para poder mantener operando el establecimiento; o con motivo de cualquier otra actuación del patrono conducente exclusivamente a la administración más eficiente del *706 establecimiento”. Exposición de Motivos de Ley Núm. 80, supra, 1976 Leyes de Puerto Rico 268. Lo que la reglamen-tación contra el despido injustificado pretende es desalen-tar y penalizar “la práctica de cesantear a empleados por razones que no tienen que ver con su desempeño en las labores o las necesidades del negocio”. C.R. Carrión Crespo, Los remedios exclusivos en el despido injustificado y el accidente del trabajo: legislación protectora del pa-trono, 32 (Núm. 1) Rev. Jur. U.I.P.R. 89, 106 (1997).
En Srio. del Trabajo v. G.P. Inds., Inc., 153 D.P.R. 223, 244 (2001), expresamos que el despido por justa causa de la Ley Núm. 80 “es aquel que delimita las circunstancias en que éste se produce; es decir, cuando tiene su origen en alguna razón o motivo vinculado a la ordenada marcha y normal funcionamiento de una empresa y no en el libre arbitrio o capricho del patrono”. (Enfasis suprimido.) El desglose de circunstancias que justifican un despido, según la Ley Núm. 80 no excluye aquella “que, por estar vincu-lada al buen funcionamiento de la empresa, podría consti-tuir justa causa para el despido”. íd. Se entiende por “justa causa” para el despido la razón que tiene su origen en una “razón vinculada a la ordenada marcha y normal funciona-miento de la empresa”. Srio. del Trabajo v. I.T.T., 108 D.P.R. 536, 543 (1979).
Esta ley “incorporó, a manera ilustrativa, una serie de causales o situaciones, en las que el despido se considera justificado”. Exposición de Motivos de la Ley Núm. 95 de 30 de junio de 2007. La Ley Núm. 80 no define el término de “despido sin justa causa”, aunque enumera “a modo general una serie de circunstancias que justifican el despido de un empleado u empleada”. Jusino et als. v. Walgreens, supra, pág. 572. El estatuto contempla dos tipos de causa-les para que el despido de un empleado se considere hecho con justa causa: (1) actuaciones imputables al obrero y de las cuales se entiende que ha provocado su despido; y (2) situaciones no imputables al obrero pero que son de tal *707 naturaleza que su despido resulta prácticamente inevitable. En las situaciones incluidas en el segundo tipo se encuentran el cierre de operaciones, reorganizaciones y reducciones de personal.
El obrero, en relación con este último tipo de causa de des-pido, no motivada por él, tiene el derecho, primero a que al determinar los obreros que han de ser despedidos por las an-tedichas causas se le dé preferencia para permanecer en el empleo a los obreros de más antigüedad, siempre que subsis-tan puestos vacantes ocupados por empleados de menos anti-güedad en el empleo que puedan ser desempeñados por ellos. Informe de la Comisión de Trabajo y Asuntos del Veterano en la Cámara de Representantes sobre el R del S. 1112, pág. 3. Véase además, Informe Conjunto de las Comisiones de Tra-bajo y Derechos Civiles y Servicio Público del Senado de Puerto Rico sobre el P. del S. 1112, pág. 4.
Surge del Diario de Sesiones que la Asamblea Legisla-tiva quiso hacer un balance de los intereses involucrados. Sobre el particular, el senador Hon. Jesús Hernández Sán-chez señaló:
[E]n la medida en que una sociedad donde la legislatura tiene que balancear ambos intereses, el interés del sector industrial y el de los intereses de la fuerza trabajadora cuando la legislatura carga mucho a favor de la fuerza laborar [sic] los patronos son renuentes a acudir a esa sociedad a invertir ... tenemos que atemperar esos intereses que chocan entre sí y tenemos que medir también [la] tasa de desempleo ... la legis-latura tiene que ser comedida en ese equilibrio que tiene que mantener. P. del S. 1112 de 24 de mayo de 1975, 3ra Sesión Ordinaria, 7ma Asamblea Legislativa, Diario de Sesiones del Senado, págs. 106-107.
Por su parte, el senador Hon. Neftalí Hernández Gon-zález manifestó que esta medida “es un esfuerzo genuino de tratar de conseguir una posición ecléctica, que nos per-mita por un lado garantizarle a un obrero que estará pro-tegido [contra un] despido injustificado y por el otro lado, el garantizar la estabilidad de las industrias que actual-mente estamos estableciendo y que actualmente están *708 establecidas”. P. del S. 1112 de 24 de mayo de 1975, supra, pág. 109.
La Ley Núm. 80 provee una protección “tanto para el patrono como para el obrero. ... Siendo de gran interés para el gobierno mantener un clima laboral saludable en las empresas privadas, se ha establecido un balance de in-terés [sic] razonable entre los derechos del patrono y del trabajador”. Exposición de Motivos de la Ley Núm. 128 de 7 de octubre de 2005. Para que el despido de un empleado se considere justificado debe: (1) no ser por capricho y (2) tiene que estar vinculado al buen y normal funcionamiento de la empresa. C. Zeno Santiago, El despido y la política social en nuestro estado de derecho, 34 (Núm. 2) Rev. Jur. U.I.P.R. 213, 225 (2000).
El Prof. Luis H. Sánchez Caso explica que el “legislador ha adoptado el enfoque de una garantía de carácter rela-tivo, pues sólo pretende disuadir al patrono para que ejerza su derecho a despedir en los casos de causa justificada”. L.H. Sánchez Caso, Reflexiones sobre la res-ponsabilidad civil de los oficiales y gerenciales en reclama-ciones de despido o discrimen, 39 (Núm. 2) Rev. Jur. U.I.P.R. 239, 244 (2004). “Del desarrollo histórico de nues-tra legislación sobre el despido, podemos ver los perfiles que ha mantenido nuestra legislación. Todas las leyes han garantizado y protegido el derecho de dirección empresa-rial ....” íd.
El Art. 2 de la Ley Núm. 80 (29 L.P.R.A. sec. 185b(d), (e) y (f)), considera como justa causa, entre otras, que el des-pido suija como consecuencia de: (1) cierre total, temporero o parcial de las operaciones del establecimiento; (2) cam-bios tecnológicos o de reorganización, y (3) reducciones en empleo que se hacen necesarias debido a una disminución en el volumen de producción, ventas o ganancias. Esta dis-posición provee expresamente que “[n]o se considerará des-pido por justa causa aquel que se hace por el mero capricho del patrono o sin razón relacionada con el buen y normal *709 funcionamiento del establecimiento”. Art. 2 de la Ley Núm. 80 (29 L.P.R.A. sec. 185b). Las leyes Núm. 65 de 3 de julio de 1986 y Núm. 9 de 3 de octubre de 1986, añadieron como injustificado el despido que se hace como consecuencia de las expresiones de un empleado y relacionadas con el ne-gocio de su patrono, en una investigación ante cualquier foro administrativo, judicial o legislativo en Puerto Rico, cuando estas expresiones no constituyan divulgación de in-formación privilegiada ni sean de carácter difamatorio. Art. 2 de la Ley Núm. 80, supra.
Por su parte, el Art. 3 de la Ley Núm. 80, supra, dispone que en los casos de despidos por las razones antes descri-tas, el patrono está “obligado a retener con preferencia en el empleo a los empleados de más antigüedad siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos” salvo que haya una “diferencia clara o inconcursa [sic] a favor de la eficiencia o capacidad de trabajadores comparados en cuyo caso prevalecerá la capacidad”. Véase, en general, A. Acevedo Colom, Legislación Protectora del Trabajo Comen-tada, 6ta ed., San Juan, [ed. de autor], 1999, págs. 190.
Se trata de causales relacionadas con el funcionamiento de la empresa y con decisiones que comúnmente se adoptan en el curso ordinario de su administración. El propósito de estable-cer y condicionar estas causales en la Ley es proteger al em-pleado de despidos arbitrarios y caprichosos, y dejar estable-cido que los mismos tienen que estar relacionados con el normal y buen funcionamiento de la empresa. Exposición de Motivos de la Ley Núm. 95 de 30 de julio de 2007.
Por otro lado,
[d]el alcance de la citada Ley, se excluyó los casos de despi-dos por cambios tecnológicos o de reorganización, o del cese total o parcial de las operaciones de una empresa. Es decir, cuando ocurre un despido por las razones antes expuestas, los obreros no tienen derecho a otra compensación que no sea aquella correspondiente al trabajo llevado a cabo y no pagado. *710 Exposición de Motivos de la Ley Núm. 278 de 15 de agosto de 2008.
La Ley Núm. 80 establece dos factores que rigen la forma en que se realizará el despido de empleados ante un cierre parcial de operaciones o una reducción parcial en el empleo. Éstas son la antigüedad y la eficiencia. Zeno Santiago, supra, pág. 223. Cuando se trata de empresas que tienen varias “oficinas, fábricas, sucursales o plantas en las cuales existe la práctica usual y regular de que sus empleados se trasladan de una unidad a otra y que las distintas unidades operan de forma sustancialmente inte-gradas en cuanto a los aspectos de personal, la antigüedad se computará a base de todos los empleados de la empresa ... que están en la clasificación ocupacional objeto de la reducción de personal”. Art. 3 de la Ley Núm. 80 (29 L.P.R.A. sec. 185c(b)).
El profesor Zeno Santiago expresa que para prosperar en una acción de despido injustificado al amparo de la Ley Núm. 80 hay que demostrar que la parte demandante: (1) es un empleado; (2) que trabajaba mediante remuneración de clase alguna; (3) laboraba a tiempo indeterminado, y (4) fue despedido sin que medie justa causa. Zeno Santiago, supra, págs. 215 — 216. Es “importante destacar que el es-tándar de justa causa es el requisito requerido en la mayo-ría de los países del mundo para convalidar las actuaciones de los empleadores conforme [con] sus prerrogativas gerenciales. Si el patrono despide injustificadamente a un trabajador estaría entonces sujeto a la sanción económica que impone el estatuto protector”. Id., pág. 217. Véase, además, Carrión Crespo, supra. “En nuestra jurisdicción el despido de un empleado siempre será válido si es por justa causa.” Zeno Santiago, supra, pág. 220.
Para la aplicación de la Ley Núm. 80 se considera que hubo un despido cuando un empleado renuncia a su em-pleo motivado “por actuaciones del patrono dirigidas a in-ducirlo o forzarlo a renunciar tales como imponerle o inten- *711 tar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra”. Art. 5 de la Ley Núm. 80 (29 L.P.R.A. sec. 185e). Véanse, además: Informe Conjunto del Senado, supra, pág. 4; Informe de la Cámara, supra, pág. 4.
De esta forma se integró a nuestro ordenamiento lo que en el common law se conoce como despido constructivo (iconstructive discharge) que es “la renuncia involuntaria de un empleado, producto de las condiciones a las que le somete el patrono deliberadamente, creando un ambiente tan intolerable, que un empleado se siente forzado a renunciar”. Zeno Santiago, supra, pág. 217.
Mediante la Ley Núm. 67 de 3 de julio de 1986, se au-torizó al Secretario del Trabajo y Recursos Humanos a adoptar y promulgar toda reglamentación necesaria para administrar la Ley Núm. 80. Art. 13 de la Ley Núm. 80 (29 L.RR.A. sec. 185m). Según la Guía Revisada para la Apli-cación de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, de 21 de septiembre de 2000, promulgada por el Departamento del Trabajo y Recursos Humanos, un des-pido constructivo se da por
[l]os actos voluntarios, onerosos e injustificados dirigidos a obligar al empleado a dejar su cargo cuando la única alterna-tiva razonable que le queda al empleado para corregir la si-tuación adversa que enfrenta en el trabajo es la renuncia. ... [L]a definición que ofrece la ley debe interpretarse conjunta-mente con la que brinda el Tribunal Supremo bajo la derogada Ley Núm. 50 .... íd., pág. 24.
Estas acciones configuran lo que se conoce como despido constructivo o tácito. La causa de acción “tiene dos elemen-tos básicos que tienen que estar presentes para que esa forma de despido ocurra ...”. Estas son: (1) acciones de se-riedad considerable por parte del patrono, y (2) el em-pleado no debe tener otra alternativa que no sea la renun-cia para resolver la situación adversa que enfrenta en el trabajo, o que aunque el empleado tenga otra alternativa *712 que no sea la renuncia, el patrono propició una condición de riesgo inminente para la vida o para la salud del empleado. Guía Revisada para la Interpretación de la Ley Núm. 80, supra, pág. 24. Estas actuaciones deben ser “ori-ginadas por un motivo ajeno al legítimo interés de salva-guardar el efectivo desempeño en el empleo ...”. Id., pág. 25.
Para determinar si la actuación del patrono fue ilegal, deben tomarse en consideración, entre otros, los factores siguientes: (1) la condición económica de la empresa; (2) los cambios tecnológicos o de cualquier otra forma que se han realizado en la empresa; (3) el desempeño y eficiencia del empleado; (4) el nivel de compensación del empleado; (5) las condiciones de trabajo de los demás empleados de la empresa; (6) la antigüedad del empleado, y (7) las razones esbozadas por el patrono para justificar su actuación. Guía Revisada para la Interpretación de la Ley Núm. 80, supra, pág. 25.
En Vélez de Reilova v. R. Palmer Bros., Inc., 94 D.P.R. 175 (1967), reconocimos que los actos voluntarios e injusti-ficados de un patrono dirigidos a obligar al empleado a renunciar, constituyen un despido cuando la única alterna-tiva razonable para ese empleado es la renuncia. Véase Arthur Young & Co. v. Vega III, 136 D.P.R. 157 (1994). Además, en Soc. de Gananciales v. Royal Bank de P.R., supra, pág. 199, expresamos que el despido constructivo surge cuando el empleado renuncia motivado por “actuaciones del patrono, tales como la imposición de condiciones onero-sas de trabajo, la reducción de salario y el descenso en el puesto, entre otras”.
h-I f — I hH
En este recurso, como cuestión de umbral, debemos de-terminar si la señora Figueroa Rivera fue sometida a un despido constructivo o tácito. Esto es, debemos determinar *713 si su traslado violó las disposiciones de la Ley Núm. 80. Una reclamación al amparo de esta ley requiere que se establezca que al empleado se le despidió de su cargo o puesto, pues la indemnización provista procede única-mente cuando ocurre un despido que resulta injustificado.
Para que se configure esta modalidad de despido tienen que existir unas actuaciones del patrono dirigidas a forzar al empleado a renunciar. Debido a que esta doctrina describe un despido funcional, que no es otra cosa que un des-pido disfrazado de renuncia, se requiere una actuación in-justificada y deliberada por parte del patrono. Al examinar conjuntamente toda la discusión de esta doctrina, se puede colegir que para su aplicación se requieren: (1) uno o más actos voluntarios por parte del patrono; (2) que éstos estén motivados por una razón ajena al legítimo interés de sal-vaguardar el efectivo desempeño de la empresa, o por una motivación que pueda calificarse como caprichosa, arbitra-ria e irrazonable, y (3) que se cree una condición onerosa para el empleado que fuerce inevitablemente la renuncia a su puesto.
Para revisar la actuación del patrono que provocó la re-nuncia debemos tomar en consideración, entre otros facto-res: (1) la condición económica de la empresa; (2) los cam-bios realizados en ella; (3) el desempeño y eficiencia del empleado; (4) el nivel de compensación del empleado; (5) las condiciones de trabajo de los demás empleados; (6) su antigüedad en el empleo, y (7) las razones esbozadas por el patrono para justificar su actuación.
En este caso, El Telar, Inc. se vio en la necesidad de cerrar la tienda de Guayama Mall, en la cual trabajaba la recurrida Figueroa Rivera. Este cierre fue parte de un pro-ceso de reorganización producto de la situación económica por la que atravesaba la empresa. Debido a la necesidad de reducción de personal y de tiendas, El Telar, Inc. realizó un estudio de antigüedad conforme a la Ley Núm. 80 para identificar los gerentes con menos años en la empresa. De *714 este estudio resultó que la gerente de la tienda de Maya-güez era la de menos antigüedad, por lo que El Telar, Inc. procedió a prescindir de sus servicios y trasladó a la ge-rente de la tienda cerrada a este puesto.
La señora Figueroa Rivera sostiene que procedía asig-narle la tienda de Guayama Pueblo, pues la gerente de dicha tienda llevaba menos años en la empresa. No pode-mos refrendar tal contención sin intervenir impermisible-mente con una prerrogativa empresarial válida. Para los casos de reducción de personal, el Art. 3 de la Ley Núm. 80, supra, ordena tomar en consideración la antigüedad de un empleado para su retención preferencial sobre los de me-nos antigüedad. Precisamente esto fue lo que hizo El Telar, Inc. al proteger a la señora Figueroa Rivera por encima de la gerente de la tienda de Mayagüez. Sería un contrasen-tido penalizar a la empresa por cumplir con el mandato de la ley. Ahora bien, la Ley Núm. 80 no le concede a la peti-cionaria el derecho de escoger en qué sucursal prefiere trabajar.
La opinión disidente de la Jueza Asociada Señora Fiol Matta aplica un escrutinio contrario al que establece la Ley Núm. 80. Según la opinión disidente,
... se necesita determinar si la actuación de El Telar, Inc. de trasladarla de Guayama a Mayagüez para realizar su trabajo le resultó onerosa, si su única opción razonable era renunciar y si el patrono tenía otras alternativas menos onerosas que evitaran su determinación. Si el patrono no tenía otras alter-nativas, estamos en la obligación de considerar que se trató de una medida legítima y justificada. Por el contrario, si tenía otras alternativas, entonces su determinación fue caprichosa e injustificada. (Enfasis suprimido.) Opinión disidente, pág. 739.
Debe quedar claro que el hecho de que un empleado renuncie porque el patrono le impuso condiciones de tra-bajo más onerosas puede considerarse como un despido, según el Art. 5 de la Ley Núm. 80, supra. Ese despido, sin embargo, puede estar justificado. Por ejemplo, puede que *715 la alternativa menos onerosa para el empleado sea la más onerosa para el patrono. Lo que requiere la Ley Núm. 80 y la jurisprudencia antes discutida, es que la actuación del patrono sea razonable y que esté relacionada con el buen y normal funcionamiento del establecimiento. Art. 2 de la Ley Núm. 80, supra. La regla que propone la opinión disi-dente constituye una camisa de fuerza para el patrono que es contraria al texto y espíritu de la Ley Núm. 80. Acoger dicho criterio sería establecer un escrutinio más estricto que el que contempló el legislador, con el efecto de limitar las facultades gerenciales legítimas del patrono. La Ley Núm. 80 no contempla tal cosa.
El Telar, Inc. es una empresa que cuenta con una serie de tiendas distribuidas en toda la isla. Enviar a la señora Figueroa Rivera a la tienda de Guayama Pueblo según el alegado mandato de la Ley Núm. 80 interferiría sustan-cialmente con la administración eficiente de la empresa. Ese resultado fue vislumbrado y rechazado por el legislador. De tener la obligación de trasladar a los geren-tes de cada tienda según sus preferencias y en atención al orden de antigüedad, se provocaría una cadena de trasla-dos que atentaría contra el normal y buen funcionamiento de la empresa. Por ejemplo, la señora Rivera Figueroa so-licita ser trasladada a la tienda de Guayama Pueblo, lo que a su vez requeriría que la gerente de esta tienda fuera trasladada a otra tienda, y así sucesivamente. Esto provo-caría un desplazamiento en cadena de gerentes a través de toda la isla. Sentencia del Tribunal de Primera Instancia, págs. 2-3, Apéndice, págs. 13-14.
Al examinar los hechos de este caso, es forzoso concluir que no se configuró un despido constructivo, cuestión indispensable para una reclamación al amparo de la Ley Núm. 80. La razón para la actuación del patrono fue su legítimo interés de salvaguardar el efectivo desempeño de su empresa. El error de los tribunales inferiores estriba en concluir que para configurar un despido constructivo sola- *716 mente se requiere establecer una condición onerosa que obligue al empleado a renunciar, sin la debida considera-ción de los factores antes discutidos. En cada caso particular pueden concurrir un sinnúmero de condiciones onero-sas que pueden llevar a un empleado a renunciar a su puesto, pero ello no necesariamente constituye un despido constructivo indemnizable según la Ley Núm. 80.
Aunque la acción de El Telar, Inc. provocó una condición onerosa para la señora Figueroa Rivera, tuvo un motivo legítimo y justificado. Como bien señaló el foro primario, no estamos ante una actuación ejercitada por el mero ca-pricho, sino ante un traslado producto de razones directa-mente relacionadas con el buen y normal funcionamiento de la empresa, y diseñado para cumplir con el texto de la Ley Núm. 80. Por esa razón, estoy conforme con la senten-cia que emitimos hoy.
— O —