**Luis R. MARTI, Plaintiff,**

v.

**CHEVRON U.S.A., INC., Chevron Corporation, Defendants.**

**Civ. No. 90–2533 (JAF).**

United States District Court,
D. Puerto Rico.

Aug. 6, 1991.

Angel L. Calero–Cerezo, San Juan, P.R., for plaintiff.

Francisco Chevere, McConnell Valdes Kelley Sifre Griggs & Ruiz–Suria, San Juan, P.R., for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiff Luis Martí commenced this action against defendants Chevron U.S.A., Inc. and its parent corporation, Chevron Corporation[1] in the Superior Court of Puerto Rico, San Juan Part. Plaintiff alleged that defendant violated Act No. 80, of May 30, 1976, as amended, 29 L.P.R.A. §§ 185a–185m (1985 and Supp.1990) ("Act 80"), in that defendant dismissed plaintiff without cause and did not comply with the severance pay requirements of the Act. Plaintiff also raised a breach of contract claim.

Defendant removed the action to this court pursuant to 28 U.S.C. § 1441(a). Removal is based on the diversity jurisdiction of this court pursuant to 28 U.S.C. § 1332.[2]

Before the court are the parties' cross-motions for summary judgment. Because we find neither a violation of Act 80 nor a breach of contract, we grant defendant's motion for summary judgment. Accordingly, we deny plaintiff's motion and dismiss the complaint.

## I.

### FACTS

Plaintiff Martí began working for Gulf Oil Corporation ("Gulf") in June 1968. He was employed by Gulf or its affiliates in the Continental United States until October 1983, when Gulf transferred him to Puerto Rico as a General Manager for marketing in its Puerto Rico subsidiary, Gulf Petroleum S.A. ("Gulf S.A.").

---

1. In their Motion for Summary Judgment, defendants claim that plaintiff never served process against Chevron Corporation. Plaintiff does not dispute this fact. Therefore, we dismiss this complaint as to defendant Chevron Corporation.

2. Chevron also invoked the original jurisdiction of this court pursuant to 28 U.S.C. § 1331 (federal question) and § 1337 (Commerce). As to federal question jurisdiction, defendant alleges that plaintiff's claim is one to recover benefits due under an employee benefit plan which, in turn, is covered by the Employee Retirement Security Act of 1974, as amended, 29 U.S.C. §§ 1001–1461 ("ERISA"). In its motion for summary judgment, defendant chose not to argue as grounds for dismissal the issue as to whether ERISA preempts plaintiff's state law claims. Because of our disposition of this case, we too do not reach the preemption issue.

Beginning in 1984, corporate reorganization resulted in shifts in Martí's employment. In April 1984, Chevron Corporation assumed control of Gulf operations worldwide, including those in Puerto Rico. At this point, Martí managed the marketing operations of both Gulf S.A. and Chevron's marketing subsidiary, Compañía Petrolera Chevron. ("Petrolera"). The merger between Gulf and Chevron in the United States became final in July 1985. After the merger Gulf became defendant Chevron U.S.A. Inc. ("Chevron"), a subsidiary of Chevron Corporation. Following the merger, further corporate restructuring occurred. Chevron established a wholly-owned subsidiary, Transocean Gulf Oil Company ("Transocean") which, in turn, had as a subsidiary Caribbean Gulf Refining Corporation ("CARECO"). CARECO integrated both Gulf S.A. and Petrolera. Plaintiff thereafter became the general manager of marketing for CARECO.

Beginning in 1986, Transocean began negotiations for the sale of CARECO with Carey Energy Corporation ("Carey"). In a memo dated May 13, 1986 and in a letter dated September 9, 1986, Chevron officials informed plaintiff that, after the impending sale to Carey, there would be no position available with Chevron in the United States. (Docket Document No. 16, *Exhibit 2*, Deposition Exhibits Nos. 9, 10). However, the proposed sale of CARECO to Carey never materialized.

Subsequently, Chevron began negotiations with F.O.I. AG ("FOI"). On June 2, 1987, a stock purchase agreement for the sale of CARECO was executed between Transocean and FOI. In a letter of understanding dated July 14, 1987, Transocean agreed to loan plaintiff to FOI for a term ending December 31, 1987. (*Id.*, Deposition Exhibit No. 12(b)). It was agreed that plaintiff would act as the manager of marketing of CARECO and would report to the managing director. Chevron reserved the right to terminate the availability of Martí at any time and specified that they would not continue providing services should plaintiff terminate "his employment with Chevron or CARECO." (*Id.* at 2).

On October 6, 1987, plaintiff received a letter from David Smith, General Manager of the Sales Marketing Division of Chevron. Again, the letter clearly stated that defendant Chevron would not have a position available for plaintiff at the end of the loan period with FOI and encouraged plaintiff to consider a potential employment offer with FOI. The letter went on to provide:

If such an employment opportunity with F.O.I. does not materialize, by the end of the loan period, your termination would be covered by a severance plan, and Chevron will also provide you with certain relocation benefits to assist you and your family in returning to the U.S. mainland. The following is a detailed explanation of the benefits for which you would be eligible *if employment by F.O.I. does not come to pass.* (Emphasis added).

The termination benefits detailed in the letter included: severance pay in the amount of $59,000, calculated as two weeks basic pay per year for each year employed at Chevron/Gulf; notice pay in the amount of $9,000; and outplacement services. Also, Chevron would provide relocation benefits subject to certain limitations.

After December 31, 1987, plaintiff continued to function as the general manager of marketing for CARECO. Thereafter, plaintiff entered into an employment contract with CARECO, represented by its president Gad Zeevi, also one of the owners of FOI. (*Id.*, Deposition Exhibit No. 17). The term of the agreement was for a period of three years commencing on January 1, 1988.

In May 1989, plaintiff's contract was terminated by CARECO. At the time of termination, pursuant to the employment agreement, plaintiff received six months base salary as severance pay.

## II.

## STANDARDS

### A. *Summary Judgment*

The parties are before the court on motions for summary judgment pursuant to

Fed.R.Civ.P. 56. A court should grant a motion for summary judgment "if the pleadings, depositions, and answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir. 1988). The two inquiries which the court must make before granting or denying a motion for summary judgment relate to the *materiality* and the *genuineness* of the factual dispute. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Sheinkopf v. Stone,* 927 F.2d 1259 (1st Cir.1991); *Local No. 48, United Brotherhood of Carpenters & Joiners v. United Brotherhood of Carpenters & Joiners,* 920 F.2d 1047, 1050 (1st Cir.1990); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir. 1990).

In order to determine whether the factual dispute between the parties is "material", the substantive law will identify which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Sheinkopf,* 927 F.2d at 1262; *See generally* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2725 at 93–95 (1983). Therefore, Act 80 will be examined to determine which facts are material with respect to defendant's alleged liability for severance pay.

The second determination relates to the "genuineness" of the dispute about the material facts. In *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510, the Court explicitly stated that a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." It is not required that the party opposing summary judgment, in asserting the existence of an issue of material fact, resolve it conclusively in order to proceed to trial, but rather that

"sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial," *First Nat. Bank v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968), thereby resolving the factual issues "before the related legal issues can be decided." *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir. 1989); *Sheinkopf,* 927 F.2d at 1262.

Further, when a motion for summary judgment is made, it is important to be precise as to the parties' burdens of production and persuasion.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. [citations omitted]. This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party. [citation omitted]. The court need not decide whether the moving party has satisfied its ultimate burden of persuasion until the Court finds that the moving party has discharged its initial burden of production. [citations omitted].

*Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); 10A Wright, Miller & Kane § 2727. The initial burden of production imposed on the moving party is to make a prima facie showing that it is entitled to summary judgment and, where it is the moving party who will have the burden of persuasion at trial, the motion must be supported by credible evidence "that would entitle it to a directed verdict if not uncontroverted at trial." *Celotex,* 477 U.S. at 331, 106 S.Ct. at 2557. Only then does the burden of production shift to the party opposing the motion. Where it is the nonmoving party who will have the burden of persuasion at trial, the moving party may satisfy the Rule 56 burden of production in one of two ways.

First, the moving party may submit affirmative evidence that negates an essen-

tial element of the nonmoving party's claim. Second the moving party may demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* 10A Wright, Miller & Kane § 2727, pp. 130–131; Louis, *Federal Summary Judgment Doctrine: A Critical Analysis,* 83 Yale L.J. 745, 750 (1974). *Celotex,* 477 U.S. at 331, 106 S.Ct. at 2557. When the moving party chooses the second option and moves for summary judgment on the ground that the nonmoving party—who will bear the burden of persuasion at trial—has no evidence, the moving party "must affirmatively show the absence of evidence in the record." *Celotex,* 477 U.S. at 331–32, 106 S.Ct. at 2557. Throughout this analytical process, any doubt as to the existence of a genuine issue of fact should be resolved *against* the moving party, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970), and courts "must review the evidentiary record in the light most hospitable to the nonmovant and must indulge all reasonable inferences in his favor." *Sheinkopf,* 927 F.2d at 1262.

Here, the material facts outlined above upon which both parties rely are not in dispute. Only their interpretation, and that of the contracts and memoranda submitted, remain. Therefore, disregarding solely any conclusory allegations made by the parties, *Sheinkopf,* 927 F.2d at 1262, we believe that the present action is ripe for summary disposition.

## B. *Act 80*

Act 80 is a remedial statute which mandates the payment of certain sums where an employee is wrongfully discharged. Article 1, in relevant part, provides that:

Every employee in commerce, industry or any other business or place of employ-

ment ... in which he works for compensation of any kind, under contract without a fixed time, who is discharged from his employment without good cause shall be entitled to receive from his employer, in addition to the salary he may have earned:

(a) the salary corresponding to one month as indemnity;

(b) an additional progressive indemnity equivalent to one week for each year of service.

29 L.P.R.A. § 185a. The statute goes on to define the term "just cause," § 185b,[3] and "discharge", § 185e.

In *Rodriguez v. Eastern Air Lines, Inc.,* 816 F.2d 24, 27–28 (1st Cir.1987), the United States Court of Appeals for the First Circuit analyzed the legislative history of Act 80. Quoting the Statement of Motives contained in Act 80, the court noted that

[t]he Statement asserts the right of Puerto Rican workers to more effective protection for their employment through a law "which affords more just remedies commensurate with the damages caused by an unjustified discharge and at the same time discourages the incidence of this sort of discharge."

*Id.* at 27. As another district judge of this court has noted, "this legislation sought to strike a balance between the freedom of choice inherent to an employer and the social need to do away with arbitrary terminations of employment." *Vargas v. Royal Bank of Canada,* 604 F.Supp. 1036, 1039 (D.P.R.1985) (J. Acosta); *see Rodriguez,* 816 F.2d at 28.

Important for the resolution of the present dispute is Article 6 which defines the duties of the respective employers when an ongoing business is transferred.

In the case of transfer of a going business, if the new acquirer continues to use the services of the employees who

---

**3.** We note here that among the reasons found to constitute "just cause" under § 185b are: (d) full, temporary, or partial reclosing of the operations of the establishment; (e) technological or reorganization changes. Because of our disposition of the case, we do not reach the issue of whether plaintiff's discharge from Chevron was for "just cause" thus barring the application of

Act 80. However, as we noted above, Chevron had reorganized its Puerto Rico operations several times in the immediate period prior to plaintiff's discharge and at each step had advised him of the possibility that there would not be a position for him within the Chevron organization.

were working with the former owner, such employees shall be credited with the time they have worked in the basis under former owners. *In the event that the new acquirer chooses not to continue with the services of all or any of the employees and hence does not become their employer, the former employer shall be liable for the compensation provided herein,* and the purchaser shall retain the corresponding amount from the selling price stipulated with respect to the business. *In case he discharges them without good cause after the transfer,* the new owner shall be liable for any benefit which may accrue under sections 185a–185*l* of this title to the employee laid off, there being established also a lien on the business sold, to answer for the amount of the claim.

29 L.P.R.A. § 185f (emphasis added).

## III.

## DISCUSSION

■ Our review of the facts of this case and the relevant law lead us to conclude that plaintiff is not entitled to severance pay from defendant Chevron. Plaintiff's claim is that Chevron, the predecessor employer, discharged him without cause and, as such, is liable under Act 80. However, the facts also establish that CARECO was transferred from Chevron to FOI and that plaintiff occupied the same position that he had previously held with Chevron. Therefore, section 185f applies and it was CARECO–FOI, and not Chevron, who was required by Act 80 to make plaintiff's severance payment. Therefore, defendant is entitled to summary judgment as a matter of law.

To support his position that Chevron is liable under Act 80, plaintiff makes several arguments, most of which revolve around the identities of the corporate employers. Plaintiff maintains that he was never an employee of either Transocean or CARECO. He also disclaims being employed by CARECO's buyer, FOI. Therefore, according to plaintiff, the fact that the ownership of CARECO was transferred from Trans-

ocean to FOI had no effect on Chevron's duty with respect to severance pay.

We disagree with plaintiff's interpretation and selective use of the facts. As outlined above, prior to its sale, plaintiff was a Chevron employee assigned as CARECO's general manager for marketing in Puerto Rico. It is beyond doubt that CARECO, through Transocean, was a subsidiary of Chevron. At the time of the stock transfer, plaintiff was loaned to FOI by Chevron in order to help in CARECO's transition from one ownership interest to another. At the end of this transition period plaintiff terminated with Chevron and, effective January 1, 1988, became an employee of CARECO. Further, it is not disputed that, after the stock transfer, CARECO was owned by FOI. Therefore, the evidence before this court establishes that an ongoing business concern was transferred and that the new acquirer continued with plaintiff's services. Consequently, FOI–CARECO had the responsibility to comply with the mandates of Act 80.

Plaintiff also argues that *at the moment* of his termination with Chevron, December 31, 1987, he had not signed a contract with CARECO. However, defendant has submitted evidence that plaintiff continued to go to his office at CARECO, was involved in negotiating an employment contract with CARECO, and ultimately was compensated by the successor corporation for his services from January 1, 1988. These facts demonstrate that plaintiff remained an employee of an ongoing business which underwent a change of ownership. Therefore, section 185f applies and Chevron is not liable to plaintiff for severance pay.

Also, the structure of the statute, its legislative history, and interpretative case law favor the position that defendant Chevron is not liable for severance pay. The goal of Act 80 is to provide some limited relief to employees who are discharged without cause. Therefore, employees who are dismissed for cause are not entitled to the relief afforded by Act 80. In the case of a transfer of an ongoing business, the statute seeks to place the burden of compliance on the employer who causes the dis-

charge. Where the employee continues in the service of the purchaser, it is the latter who is liable if the employee is subsequently discharged. If the purchaser chooses not to hire the employee, the former employer is liable. It seems clear that the language of section 185f encompasses the situation before us. Had plaintiff not accepted the position with CARECO–FOI, Chevron would have been liable under Act 80. However, once plaintiff accepted employment with the purchaser, they also became liable under Act 80 for any discharge without cause. From the evidence submitted, it seems that CARECO–FOI fulfilled its duty and paid to plaintiff the amount of severance pay due.

Here, even if we were to find that plaintiff's discharge from Chevron was not for just cause (which we do not), we would be faced with the situation of an employee, who continues working uninterruptedly at the same position for a corporate entity that has changed ownership and who has already been paid the compensation due under Act 80 by the subsequent employer, now seeking the benefit of Act 80 for a second time.[4] To find for plaintiff, this court would have to extend the reach of the statute far beyond its intended purpose which is to soften somewhat the effects of sudden and unexpected unemployment. This we will not do. We therefore find that section 185f placed the burden of compensation on the successor employer, CARECO–FOI, and not on defendant Chevron.

■ Finally, plaintiff claims that the October 6, 1987 letter created a binding contract which Chevron breached by not paying to plaintiff the benefits outlined in the agreement.

We first note that plaintiff's exclusive remedy for wrongful discharge is contained in the provisions of Act 80, *Rodríguez,* 816 F.2d at 27–28; *Bahamundi v. American Airlines, Inc.,* 707 F.Supp. 79, 80–81 (D.P.R.1989); *Vargas,* 604 F.Supp. at 1039–40, unless it can be shown that the employer has engaged "in some type of tortious conduct separate and independent from the termination of employment as such." *Vargas,* 604 F.Supp. at 1040; *see Rivera v. Security Nat. Life Ins. Co.,* 106 D.P.R. 517, 527 (1977). Here, presumably plaintiff is arguing that the October 1987 letter created a binding contract which was breached and this agreement is independent from the act of termination and therefore provides a separate basis for liability under Puerto Rico law.

However, we note that this discussion is academic given that the language of the letter unequivocally states that termination benefits will be paid only where plaintiff does not accept an employment offer from FOI. Having found above that plaintiff did, in fact, accept such an offer, we rule that defendant did not breach any agreement.

### IV.

### CONCLUSION

In sum:

We GRANT defendant's motion for summary judgment. Accordingly, we DENY plaintiff's motion for summary judgment.

---

**4.** Here we note plaintiff's argument that his employment contract with CARECO–FOI was for a three-year term and thus not covered by Act 80. Thus, plaintiff argues, defendant cannot use any contractual severance pay received from the successor owner to set off payments owed by the predecessor. Plaintiff cites no authority for this proposition nor does he explain the relationship between 185a and 185f which deal with the employee's relationship to the two ownership interests *at the time of transfer.* We think that the manner which the successor employer chooses to hire the employee (with or without an employment contract, for a definite or indefinite period) does not change the operation of the transfer provision of Act 80. Once the person is hired by the successor employer, the former owner is relieved of liability. The fact that section 185f also establishes a lien on the business sold to guarantee the payment of any sums which may become due and owing under Act 80 also comports with this interpretation. If FOI had attempted to sell CARECO without fulfilling its severance pay obligation to plaintiff, based on its status as the acquiring corporation, then presumably plaintiff would have had an action for severance pay against CARECO based both on the employment contract and under Act 80 for failure to fulfill its duty as purchaser of an ongoing business and the lien would have prevented the business from being sold until such obligations were paid.

Judgment will be entered dismissing the complaint.

IT IS SO ORDERED.

