PEDRO PIÑEIRO y OTROS, demandantes y recurridos, *v.* INTERNATIONAL AIR SERVICES OF PUERTO RICO, INC. y OTRO, demandados y recurrentes.

*Número:* RE-91-496          *Resuelto:* 18 de marzo de 1996

344

*Ángel L. Morales Rodríguez*, abogado de la parte recurrente; *Carmen I. Muñoz Noya*, abogada de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR CORRADA DEL RÍO emitió la opinión del Tribunal.

Nos corresponde resolver si el Art. 6 de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185f) aplica a situaciones en las cuales el patrono predecesor despide sin justa causa a ciertos empleados; todo ello antes de efectuarse el traspaso del negocio. Asimismo, nos toca resolver si la doctrina del patrono sucesor, que hemos adoptado jurisprudencialmente, se extiende a reclamaciones por despido injustificado, ello en caso de que no aplique el mencionado artículo 6.

I

El 21 de mayo de 1987 los Sres. Pedro y Dámaso Piñeiro, trabajadores de rampa desde 1965 para la International Air Services of Puerto Rico, Inc. (en adelante International) fueron despedidos por alegadas razones económicas. Estos despidos se realizaron sin alegadamente tomarse en consideración que éstos tenían mayor antigüedad que otros que fueron retenidos por el patrono.

Así las cosas, el 29 de septiembre de 1988 los Sres. Pedro y Dámaso Piñeiro presentaron una demanda contra su antiguo patrono International, así como contra Airport Aviation Services, Inc. (en adelante Airport). Alegaron que International le traspasó su negocio en marcha a Airport, por lo que solicitaron que se le fijara responsabilidad por los despidos de los demandantes. Reclamaron una indemnización al amparo de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. secs. 185a–185m), así como la suma de veinte mil dólares ($20,000) a cada uno por concepto de daños y perjuicios.

La codemandada Airport contestó la demanda, mas no así International, a quien le fue anotada la rebeldía. Luego de varios trámites procesales, Airport presentó una moción para solicitar que se dictara sentencia sumaria en la cual alegó que los demandantes nunca fueron empleados suyos y que el responsable por los despidos era International, por lo que solicitaba la desestimación de la demanda en cuanto a Airport. Alegó, además, que no procedía la compensación por angustias mentales. Los demandantes se opusieron a dicha solicitud y alegaron que Airport adquirió la totalidad del equipo, las plantas y los materiales de International, así como que retuvo a los gerenciales, por lo que alegan que hubo un traspaso de negocio en marcha. A su vez, la codemandada Airport replicó al escrito de oposición presentado por los demandantes.

Mediante Resolución de 26 de enero de 1990 el tribunal de instancia resolvió que no procedía desestimar la reclamación de indemnización por alegado despido según la Ley Núm. 80, *supra*. Concluyó que hubo un traspaso de negocio en marcha, mas indicó que había una controversia real con relación al despido de los demandantes. Señaló en su resolución que: "la Junta Extraordinaria en Resolución de 9 de noviembre de 1987 de la Junta de Directores de la codemandada International Air Services of P.R., Inc. autorizó al Presidente a *'la venta de los activos de la Empresa International Air Services of Puerto Rico, Inc.*, incluyendo, y sin limitarlo a cualquier gestión con el Banco Comercial de Mayagüez relacionada con la cesión de una deuda de $563,000.00 la cual será reducida en $320,000.00 y negociada a un plan de pago con dicho restante."[1] (Énfasis en el original.) Concluyó el tribunal de instancia que aplicaba el Art. 6 de la Ley Núm. 80, *supra*, por lo que declaró no ha lugar la solicitud de sentencia sumaria respecto a la reclamación por el alegado despido injustificado, además desestimó la reclamación por concepto de daños y perjuicios, ya que el único remedio disponible era la mesada.

Así las cosas, celebrada la vista en su fondo, el tribunal de instancia dictó sentencia el 23 de mayo de 1991 que condenaba a Airport e International a satisfacer a los demandantes Pedro y Dámaso Piñeiro la cantidad correspondiente de mesada, según lo dispone la Ley Núm. 80, *supra*. Concluyó el tribunal de instancia que luego de haber sido despedidos los demandantes por International, las operaciones y el rótulo de éste se encontraban localizados en el mismo mostrador que el de Airport. Asimismo, concluyó que luego del despido de los demandantes, los cheques de pago de salario *de los empleados de International* prove-

---

[1] Resolución de 26 de enero de 1990, págs. 1–2, emitida por el extinto Tribunal Superior de Puerto Rico, Sala de Caguas, Hon. Roberto R. Muñoz Arill, Juez.

nían de las oficinas de Airport, y que la maquinaria que éste último utilizaba era la misma de International.

No conforme, acude ante nos la codemandada Airport y, en síntesis, formula los señalamientos de error siguientes:

1. Erró el tribunal de instancia al resolver que el artículo 6 de la Ley 80, *supra*, le aplicaba a la recurrente Airport, y que ésta venía obligada a retener del precio de venta la cantidad correspondiente al pago de mesada.

2. Erró el tribunal de instancia al determinar que hubo un traspaso de negocio en marcha.

3. Erró el tribunal de instancia al no hacer determinaciones de hecho en cuanto a que existía un convenio colectivo vigente el cual contenía una cláusula de quejas y agravios.

4. Erró el tribunal de instancia al no sostener la defensa afirmativa levantada por la recurrente Airport, en cuanto a que los demandantes estaban impedidos de reclamar por no agotar los remedios dispuestos en el convenio colectivo. Véase Alegato de la recurrente, pág. 7.

II

◼ En primer lugar, habremos de analizar si el Art. 6 de la Ley Núm. 80, *supra*, aplica a situaciones en que el *patrono predecesor despide* sin justa causa a ciertos empleados, todo ello *antes de efectuarse el traspaso del negocio*. La contestación a esta interrogante es en la negativa. Nos explicamos.

El Art. 6 de la Ley Núm. 80, *supra*, provee que:

En el caso del traspaso de un negocio en marcha, si el nuevo adquirente continúa utilizando los servicios de los empleados que estaban trabajando con el anterior dueño, se les acreditará a éstos el tiempo que lleven trabajando en el negocio bajo anteriores dueños. En caso de que *el nuevo adquirente opte* por no continuar con los servicios de todos o algunos de los empleados y no advenga en su consecuencia patrono de éstos el anterior patrono responderá por la indemnización provista por las secs.

185*a* a 185*m* de este título el comprador deberá retener la cantidad correspondiente del precio de venta convenido respecto al negocio. En caso de que *los despida sin justa causa después del traspaso,* el nuevo dueño responderá por cualquier beneficio que bajo las secs. 185*a* a 185*m* de este título pueda tener el empleado que quede cesante, estableciéndose además un gravamen sobre el negocio vendido para responder del monto de la reclamación. (Énfasis suplido.) 29 L.P.R.A. sec. 185f.

Del texto de la disposición citada surge que se proveen dos (2) situaciones, y en ambas la decisión sobre continuar o no utilizando los servicios de los empleados del patrono predecesor recae sobre el nuevo adquirente.[2] De ahí que no nos queda la menor duda que el referido artículo no aplique al caso de autos, toda vez que aquí quien despidió a los empleados fue el patrono predecesor, International, situación que no está expuesta en el artículo mencionado.

Habiéndose aclarado dicho extremo, pasaremos a analizar si en el caso de autos aplica la doctrina del patrono sucesor, por lo que según dicha doctrina Airport sería responsable de los despidos efectuados por International. Esto, puesto que en varias ocasiones hemos ampliado la doctrina del patrono sucesor en auxilio de la responsabilidad judicial de darle vigencia en casos concretos a importantes políticas públicas en el campo laboral, conforme a nuestra realidad económica, social y cultural. *Bruno López v. Motorplan, Inc. y otros,* 134 D.P.R. 111 (1993).

Así pues, en *J.R.T. v. Coop. Azucarera,* 98 D.P.R. 314, 322–325 (1970), al discutir la figura de patrono sucesor a los fines de imponer responsabilidad al nuevo patrono

---

[2] Así lo ha reconocido el especialista en esta materia R. Delgado Zayas, *Manual informativo de legislación protectora del trabajo de Puerto Rico,* San Juan, [s. ed.], 1989, pág. 283, al mencionar las obligaciones que tiene el anterior dueño y el nuevo adquirente según el Art. 6 de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185f) aquí en controversia. A dichos efectos, señala las dos (2) situaciones expuestas en el referido artículo, a saber: (1) si *el adquirente no retiene* los servicios de los empleados y no llega a ser su patrono, la ley exige que éste deberá retener del precio de venta del negocio la suma de indemnización mencionada en la ley; (2) *si el adquirente retiene* los servicios de los empleados y *luego los despide* sin justa causa, la ley dispone que éste responda por el despido con la indemnización que establece la ley.

por las obligaciones contraídas por el anterior con sus empleados, señalamos que:

> ... [e]n términos generales se requiere una similaridad sustancial en la operación y una continuidad en la identidad de la empresa antes y después del cambio para que se estime que el nuevo patrono deberá asumir obligaciones contraídas por el anterior.
> ... Se ha sugerido la consideración de varios factores a los fines de determinar la existencia de esta similaridad y continuidad, a saber: (1) la existencia de una continuación sustancial de la misma actividad de negocios; (2) la utilización de la misma planta para las operaciones; (3) el empleo de la misma o sustancialmente la misma fuerza obrera; (4) la conservación del mismo personal de supervisión; (5) la utilización del mismo equipo y maquinaria y el empleo de los mismos métodos de producción; (6) la producción de los mismos productos y la prestación de los mismos servicios; (7) la retención del mismo nombre, y (8) la operación del negocio durante el período de transición. La concurrencia de un número suficiente de estos factores es determinante en cuanto a la continuación de obligaciones del convenio. (Citas y escolios omitidos.)

■ Por otro lado, en *J.R.T. v. Asoc. C. Playa Azul I*, 117 D.P.R. 20, 29 esc. 6 (1986), al discutir de nuevo la responsabilidad de un patrono por las obligaciones laborales de su predecesora, señalamos que "la doctrina del patrono sucesor (*successorship*) se usa cuando hay una venta o transferencia de activos o reorganización de un negocio .... Lo que se requiere es que haya similaridad sustancial en la operación de la empresa y continuidad en la identidad de la empresa antes y después del cambio ...".

■ En Puerto Rico hemos adoptado la doctrina del patrono sucesor en el campo laboral para hacer valer los términos de un convenio colectivo, *Beaunit of Puerto Rico v. J.R.T.*, 93 D.P.R. 509 (1966), y *J.R.T. v. Coop. Azucarera*, supra; para hacer responsable a un patrono sucesor por las prácticas ilícitas cometidas por el patrono anterior, *J.R.T. v. Club Náutico*, 97 D.P.R. 386 (1969), y para hacer responsable a un patrono sucesor por los despidos discriminato-

rios realizados por el patrono anterior, *Bruno López v. Motorplan, Inc. y otros*, supra.

Al igual que en los casos en los cuales se ha justificado la aplicación de la doctrina del patrono sucesor, la política pública contra los despidos injustificados es de carácter similar a las políticas públicas sobre el derecho a la negociación colectiva, la prohibición de prácticas ilícitas del trabajo y la prohibición de despidos discriminatorios. La Ley Núm. 80, *supra*, conocida como la Ley de Despido o de la Mesada, fue creada con el propósito de darle una mayor protección a los trabajadores en aquellas situaciones de despido injustificado y hacer más restrictivo el concepto de "justa causa". En *Srio. del Trabajo v. I.T.T.*, 108 D.P.R. 536, 547 (1979), al interpretar dicha ley indicamos que "[p]ara el trabajador, partícipe menor en los frutos de la empresa, para quien no hay liquidación de dividendos, ni beneficios, ni intereses acumulados en la digna faena de ganar con su esfuerzo el pan que parte en la mesa con los suyos, para quien el ahorro es ilusión devoradora por la estrechez, la indemnización por despido es importante evento de la justicia social debida al hombre como factor de producción. Cuando el desempleo condena a un ser humano y a su familia al hambre o a la indignidad, hay que llegar a límites de exigencia para privarle de la protección que ha ganado acceso a nuestra legislación social". Se trata pues de una importante política pública en el campo laboral. Por ende, se justifica la aplicación de la doctrina del patrono sucesor a reclamaciones de empleados por despido injustificado.

Ahora bien, en *Bruno López v. Motorplan, Inc. y otros*, supra, hicimos unos pronunciamientos adicionales sobre la responsabilidad del patrono sucesor. Allí indicamos que "[e]s menester recordar que, conforme a dicha doctrina, los perfiles precisos de la responsabilidad que se le ha de imponer al patrono sucesor dependen de los hechos particulares del pleito en cuestión. Las obligaciones que se

atribuirán al nuevo patrono se determinan caso a caso, con arreglo a las circunstancias particulares de cada cual". (Citas omitidas). *Bruno López v. Motorplan, Inc. y otros*, supra, pág. 121. Allí citamos el caso *E.E.O.C. v. P.R. Job Corps.*, 729 F. Supp. 208, 218–219 (D. P.R.1990), en que el Tribunal federal señaló que:

> … In these cases, liability depends on whether the successor had notice, *whether the predecessor was capable of providing relief, whether there has been substantial continuity of business operations,* [whether the new employer uses the same facilities, employees, and management and produces the same product or service. *Bernstein*, 622 F.Supp. at 1108[3] (citations omitted). *'No one of these factors is controlling*; the court must look at all of them along with any others that present themselves in the case before it, and it must make its decision by *balancing the interests* of the plaintiff and the national policy of abhorrence toward employment discrimination against the interest of the successor'. (Citas omitidas y énfasis suplido.)

Aplicando todo lo antes expuesto al caso de autos y tomando en consideración los factores que fueron enumerados en *J.R.T. v. Coop. Azucarera*, supra, concluimos que Airport es el patrono sucesor de International. Nótese que en el caso ante nos existía una similitud y continuidad sustancial entre ambas empresas, ya que Airport adquirió de International, no sólo sus activos y deudas, sino que, luego de la adquisición, continuó llevando a cabo actividades idénticas, utilizando el mismo equipo y la maquinaria de International. Asimismo, Airport conservó básicamente la misma fuerza obrera; prestó los mismos servicios; utilizó el mismo mostrador, y operó el negocio durante un período de transición, además efectuó los pagos de la nómina de empleados mucho antes de concretarse dicho traspaso. En conclusión, en el caso de autos están presentes varios factores que apoyan la aplicación de la doctrina del patrono sucesor.

---

[3] *Bernstein v. Consolidated Foods Corp.*, 622 F. Supp. 1096 (N.D. Ill. 1984).

■ De otra parte, aplicando los factores adoptados en *Bruno López v. Motorplan, Inc. y otros*, supra, esbozados por el Tribunal federal en *E.E.O.C. v. P.R. Job Corps.*, supra, y antes relacionados en esta opinión, nos encontramos con que el patrono predecesor no es capaz de proveer un remedio a los empleados, así como que hay una continuidad sustancial de las operaciones del negocio. Surge de la resolución que emitiera el tribunal de instancia el 26 de enero de 1990 que dicho foro determinó que International traspasó todos sus activos a Airport, por lo que dicho foro indicó que los empleados se encontrarían en la precaria situación de no poder cobrarle a International, de ganar la demanda en su día. Nótese, además, que International nunca compareció al pleito por lo que le fue anotada la rebeldía. Por otro lado, de lo antes discutido surge que hay una continuidad sustancial o prácticamente idéntica en la operación del negocio. Si bien es cierto que no hay prueba de que Airport tuviera conocimiento de las reclamaciones de los empleados, al sopesar los factores presentes en este caso, y en un justo balance de los intereses involucrados, concluimos que Airport es responsable por el despido injustificado llevado a cabo por el patrono predecesor; esto es, International. Al tomar esta determinación hemos considerado la clara continuidad en la identidad entre ambas empresas, la similaridad en la operación del negocio, así como la política pública de proveer protección a los trabajadores en casos de despido injustificado. Sobre todo, cuando en este caso los empleados de otro modo estarían incapacitados de obtener un remedio. Como parte del proceso de negociar la adquisición de un negocio, el comprador debe solicitar información sobre toda la reclamación laboral pendiente contra el patrono predecesor, incluso las reclamaciones sobre despidos, pudiendo tomar medidas cautelares tales como retener parte del precio en reserva para atenderlas, por lo que nuestra decisión no resulta onerosa para los partícipes en este tipo de transacción. Ya desde

1966 hemos ido aplicando la doctrina del patrono sucesor a los efectos de imponer responsabilidad al nuevo adquirente en reclamaciones laborales contra el patrono predecesor, sin crear ello un peligroso precedente para los inversionistas. Véanse: *Beaunit of Puerto Rico v. J.R.T.*, supra; *J.R.T. v. Coop. Azucarera*, supra; *J.R.T. v. Club Náutico*, supra; *Bruno López v. Motorplan, Inc. y otros*, supra. Ciertamente la decisión a la que aquí llegamos es un resultado justo y equitativo.

█ Por ende, concluimos que a pesar de que el tribunal de instancia erró al determinar que aplica el Art. 6 de la Ley Núm. 80, *supra*, por lo que fijó responsabilidad sobre Airport, la sentencia es correcta ya que a igual resultado llegamos al aplicar al caso de autos la doctrina del patrono sucesor, por lo que también recae responsabilidad sobre Airport. Recordemos la norma firmemente establecida por este Tribunal de que toda revisión se da contra la sentencia y no contra sus fundamentos. Véanse: *Vélez Rodríguez v. Amaro Cora*, 138 D.P.R. 182 (1995); *Álvarez Figueredo v. González Lamela*, 134 D.P.R. 374 (1993); *Toledo Maldonado v. Cartagena Ortiz*, 132 D.P.R. 249 (1992).

### III

Por último, los señalamientos de error tres (3) y cuatro (4) plantean la defensa de que al haber un convenio colectivo, los querellantes estaban impedidos de reclamar ante el Tribunal por no haber agotado los remedios dispuestos en éste en torno al mecanismo de arbitraje. Dichos señalamientos carecen de validez alguna. Surge del propio alegato de la recurrente Airport que los querellantes declararon que acudieron ante la Unión pero que ésta nada hizo al respecto. La demandada recurrente *no controvirtió tal prueba*. Además, de un examen de la contestación de la demanda presentada por la recurrente Airport surge que no levantó tal defensa, sino que, por el contrario, con rela-

ción al párrafo trece (13) de la demanda que indicaba que la parte demandante se acogía al procedimiento sumario establecido en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. sec. 3118 *et seq.*, contestó que aceptaba que la parte codemandada compareciente, esto es, Airport, podía acogerse a tal procedimiento. Por ende, tales señalamientos no ameritan discusión ulterior.

En consecuencia, *se confirma el dictamen recurrido que condena solidariamente a Airport e International al pago de la cantidad correspondiente de mesada.*

El Juez Asociado Señor Fuster Berlingeri concurrió con una opinión escrita. La Juez Asociada Señora Naveira de Rodón concurrió sin una opinión escrita. El Juez Asociado Señor Rebollo López disintió con una opinión escrita.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Fuster Berlingeri.

I

Coincido con el resultado al que llega la mayoría en el caso de autos. Estimo que las dos demandadas aquí son responsables solidariamente por el pago de la mesada a la cual los demandantes tienen derecho, conforme a lo dispuesto por la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. secs. 185a–185m).

Con lo que no estoy completamente de acuerdo es con usar la doctrina del patrono sucesor para fundamentar nuestra decisión, como lo hace la mayoría en este caso. Como se sabe, dicha doctrina es oriunda del derecho federal. En Puerto Rico hemos adoptado esta importante doctrina *jurisprudencialmente*, pero sólo en determinados casos. *Bruno López v. Motorplan, Inc. y otros*, 134 D.P.R. 111 (1993). Lo hemos hecho cuando han estado presentes

dos condiciones: (1) que sea *necesario* recurrir a dicha doctrina, y (2) que en la jurisdicción federal, en la cual se originó ésta, la doctrina ya antes haya sido aplicada a casos como el que se trae a nuestra consideración.

Ninguna de las dos condiciones antes mencionadas están presentes en el caso de autos. Por un lado, no es necesario recurrir a la doctrina del patrono sucesor porque el asunto ante nos, como se verá más adelante, puede resolverse mediante una interpretación de nuestra propia legislación laboral. Por otro lado, en la jurisdicción federal no se ha usado la doctrina en cuestión en un contexto como el del caso de autos. La mayoría aquí extiende la doctrina del patrono sucesor más allá de lo que se ha hecho en la jurisdicción federal, de donde proviene dicha doctrina. El remedio específico de pago de mesada a trabajadores despedidos sin justa causa es ajeno al contenido conocido de dicha doctrina en el ámbito federal.([1])

No es lo más propio, pues, que hagamos uso en este caso de la doctrina del patrono sucesor. Existen fundamentos más sólidos para justificar el resultado al que llega la mayoría, y que yo comparto. Véanse: *Totti v. Fernández*, 40 D.P.R. 636, 642 (1930); R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, pág. 227. Por descansar en dicha doctrina aquí, la mayoría del Tribunal realiza una interpretación del Art. 6 de la Ley Núm. 80, *supra*, que a la luz de sus hechos particulares resulta restrictiva del alcance de dicha disposición. Ello es contrario a nuestra doctrina reiterada de que los estatutos de carácter reparador, como es el de marras, deben interpretarse *liberalmente*, en este caso a favor de los derechos del traba-

---

([1]) En casos en los cuales una empresa adquirió otra similar se ha resuelto que el nuevo patrono tiene que cumplir con las obligaciones laborales pendientes del patrono anterior con respecto a empleados despedidos ilícitamente. Véase *Golden State Bottling Co. v. NLRB*, 414 U.S. 168 (1973). Pero no son casos de despido *"sin justa causa"*, según ello se define en nuestra legislación laboral, ni el remedio es la mesada, sino la reinstalación del trabajador despedido.

jador. Véanse: *Beauchamp v. Holsum Bakers of P.R.*, 116 D.P.R. 522 (1985); *Negrón v. C.I.T. Fin. Serv.*, 111 D.P.R. 657 (1981); *Srio. del Trabajo v. I.T.T.*, 108 D.P.R. 536 (1979); *Martínez Reyes v. Tribunal Superior*, 104 D.P.R. 407 (1975); *Piñán v. Mayagüez Sugar Co., Inc.*, 84 D.P.R. 89 (1961).

Veamos.

## II

La situación de hechos del caso ante nos, según se desprende de los autos —y en gran medida de la propia opinión de la mayoría— es, en esencia, la siguiente: Los recurridos, dos trabajadores de bastante antigüedad, fueron despedidos por su patrono International Air Services of Puerto Rico, Inc. (en adelante International) supuestamente por razones de contracción económica. Dicho despido ocurrió a pesar de que otros empleados del patrono en cuestión realizaban iguales labores y tenían menos antigüedad que los trabajadores despedidos. Los recurridos acudieron entonces a la unión que pertenecían, en varias ocasiones, a formular la queja correspondiente a su despido injustificado y a requerirle a ésta que formulase a su nombre la correspondiente reclamación al patrono. Los trámites ante la unión fueron infructuosos, aparentemente porque el delegado general de la unión no tenía interés en darle curso a la querella de los despedidos. Ello, porque dicho delegado era precisamente uno de los trabajadores de menor antigüedad de la empresa, quien retuvo su trabajo al momento de la alegada contracción económica.

Mientras los dos trabajadores despedidos gestionaban sus derechos a través de la unión, y esperaban por que ésta actuase, otra empresa —la Airport Aviation Services, Inc. (en adelante Airport)— comenzó a operar el negocio de International. Luego de un período de conversaciones sobre el particular, Airport adquirió a International. La tran-

sacción formal de compra se efectuó sólo cinco meses después de haber sido despedidos los dos trabajadores en cuestión.

Es innegable que durante el breve período de cinco meses que transcurrió entre el despido de los dos trabajadores y la formalización de la venta de International, ésta y Airport no sólo estuvieron negociando tal venta sino que, además, durante ese período también Airport se hizo cargo de las operaciones de International, mucho antes de concretarse dicho traspaso. *En efecto, para el tiempo en que los trabajadores despedidos esperaban que la unión atendiese su queja, International y Airport eran una misma corporación.*

## III

A la luz de los hechos antes reseñados, cabe interpretarse, como lo hizo el foro de instancia, que aplica aquí lo dispuesto en el Art. 6 de la Ley Núm. 80, *supra*, 29 L.P.R.A. sec. 185f. Es decir, (1) en vista de que Airport estuvo operando el negocio de International antes de que se formalizara su adquisición, y (2) en vista de que los trabajadores demandantes habían cuestionado la acción de International y tenían pendiente una querella por el despido ilegal, que había sido presentada ante la unión mientras Airport negociaba la adquisición del negocio con International y operaba éste, puede interpretarse que la compañía adquirente optó por no continuar con los servicios de los empleados en cuestión; por lo que, conforme al Art. 6 de la Ley Núm. 80, *supra*, estaba obligada a retener del precio de venta la cantidad correspondiente al pago de su mesada. Si bien es cierto que no se trajo una prueba concreta en el foro de instancia de que Airport tuviese conocimiento de las reclamaciones de los empleados despedidos, debe presu-

mirse que dicha compañía estaba al tanto de éstas.(²) En el curso ordinario de los negocios, una empresa no toma el total control de otra y luego la adquiere formalmente sin investigar las reclamaciones que estén pendientes contra ésta, sobre todo cuando éstas ocurrieron casi coetáneamente con el proceso de negociación de la adquisición.(³) Las prácticas comerciales fundamentadas en el concepto *due diligence*, persiguen precisamente que no se realicen adquisiciones corporativas, sin antes llevar a cabo determinadas investigaciones por el adquirente. Ello incluye, de ordinario, indagar sobre las posibles reclamaciones laborales pendientes. Véase *Due Diligence ... in the Corporate Acquisitions Practice*, International Bar Series (1989) págs. 4, 6, 12 y 48. Lo anterior permite suponer jurídicamente que la empresa adquirente conocía las reclamaciones en cuestión. Regla 16 de Evidencia, 32 L.P.R.A. Ap. IV.

La anterior interpretación del Art. 6 de la Ley Núm. 80 puede hacerse sobre todo si se toma en cuenta que la legislación en cuestión se aprobó precisamente para garantizar alguna protección a los trabajadores que sufren la ominosa circunstancia del despido, y que el modesto auxilio que se le asegura al trabajador para el sostén de su familia en lo que consigue un nuevo empleo no puede conculcarse excepto cuando haya claras y definitivas razones para ello. Como antes habíamos resuelto, "hay que llegar a límites de exigencia para privar [al trabajador despedido] de la protección que ha ganado acceso a nuestra legislación social". *Srio. del Trabajo v. I.T.T.*, supra, pág. 547.

En otras palabras, la interpretación que formula la mayoría del alcance del Art. 6 de la Ley Núm. 80, *supra*, no es la única que razonablemente puede hacerse de dicha

---

(²) Para el uso de inferencias similares, véase *Golden State Bottling Co. v. NLRB*, supra, págs. 172–174.

(³) Para una discusión de los asuntos que debe considerar una empresa al momento de adquirir a otra, véase *Acquisitions or Takeovers, In General*, 19 *Am Juris 2d* Sec. 2559 (1986).

disposición. Es igualmente posible, y más convincente en términos de su finalidad, interpretar que el referido Art. 6 es aplicable aun a situaciones como la de marras, en la cual un empleado es despedido sin haber llegado a trabajar para el patrono que adquirió un negocio en marcha. Así lo ha interpretado un conocido especialista en esta materia. R. Delgado Zayas, *La justa causa de despido y la protección del empleo en Puerto Rico*, XII (Núm. 45) Revista del Trabajo 1, 15 (1984).

La interpretación que me parece más correcta asegura, sobre una firme base estatutaria, que los dos trabajadores en cuestión no quedan totalmente desamparados. Además, sobre una firme base estatutaria, asegura que no habrá lugar para maquinaciones que persiguen socavar los derechos de los trabajadores en situaciones como las de este caso. Bajo tal interpretación, en virtud de la propia Ley Núm. 80, *supra*, una empresa que contempla adquirir a otra no podrá proponerle *subrepticiamente*, como condición para efectuar el traspaso, que ésta despida a los trabajadores que tienen los salarios más altos y que lo haga *antes* de que se formalice la venta. De este modo se asegura efectivamente que se pagará la mesada a que tiene derecho un trabajador despedido sin justa causa, como exige precisamente una fundamental ley laboral del país.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Nos vemos en la *obligación* de disentir, *de manera enérgica*, de la opinión que en el día de hoy emite una mayoría de los integrantes del Tribunal. La opinión mayoritaria emitida en el presente caso *es una no sólo errónea sino que ciertamente lamentable*. La misma constituye un vivo ejemplo de un error en que un tribunal nunca debe, ni

puede, incurrir; *esto es, el de resolver un caso por funda-mentos no jurídicos.*

Una somera lectura de la opinión mayoritaria revela que la mayoría resuelve que el "patrono sucesor", la recurrente Airport Aviation Services of Puerto Rico, Inc., es responsable ante los obreros demandantes *únicamente* debido al hecho de que dichos obreros "de otro modo estarían incapacitados de obtener un remedio"; *esto es, se responsabiliza a dicha parte exclusivamente por razón de que los obreros no pueden hacer efectiva la sentencia o cobrarle al patrono predecesor.*

Dicho de una manera más clara y sencilla, *la mayoría de los integrantes del Tribunal aplican al presente caso la conocida, pero improcedente, doctrina del "ay bendito"*; doctrina que *únicamente* opera en esta jurisdicción.

## I

*El 21 de mayo de 1987* los recurridos, Pedro y Dámaso Piñeiro, trabajadores de rampa por más de veinte (20) años para la International Air Services of Puerto Rico, Inc. (en adelante International) fueron despedidos de sus empleos por supuestas razones económicas. El despido se realizó sin, alegadamente, tomarse en consideración que estos empleados tenían mayor antigüedad que otros que fueron retenidos por el patrono.[1]

*En 9 de noviembre de ese mismo año* la Junta de Directores de International, mediante resolución a esos efectos, autorizó al presidente de dicha corporación a " 'la venta [a Airport Aviation Services] de los activos de la empresa International Air Services of Puerto Rico, Inc.; incluyendo, y sin limitarlo a cualquier gestión con el Banco Comercial de Mayagüez relacionada con la cesión de una deuda de

---

[1] La prueba demostró que el recurrido Pedro Piñeiro comenzó a trabajar para International Air Services of Puerto Rico, Inc. en febrero de 1965, mientras que Dámaso Piñeiro comenzó en octubre de 1965.

$563,000.00, la cual será reducida en $320,000.00 y negociada a un plan de pago con dicho restante' ". (Énfasis suprimido.) Resolución de 26 de enero de 1990, págs. 1–2. *Por su parte*, Airport Aviation Services, Inc. (en adelante Airport) emitió una resolución de igual fecha —*9 de noviembre de 1987*— mediante la cual aceptaba la deuda cedida por International.

De la prueba considerada por el tribunal de instancia surge que, *posterior al despido de los recurridos*, las operaciones, al igual que el rótulo de International, se encontraban localizados en el mismo mostrador que el de Airport. También surge de las determinaciones de hecho adoptadas por el tribunal de instancia que, *después del despido de los recurridos*, los cheques de pago de salario de los empleados de International provenían de las oficinas de Airport y la maquinaria que ésta última utilizaba era la misma que la de International.

El 29 de septiembre de 1988 los recurridos radicaron una demanda contra International y Airport ante el entonces Tribunal Superior, Sala de San Juan. La recurrente Airport contestó la demanda; la codemandada International nunca compareció, por lo que le fue anotada la rebeldía. El caso fue trasladado a la Sala de Caguas donde la recurrente radicó una moción de sentencia sumaria. El tribunal de instancia mediante Resolución de 26 de enero de 1990, no obstante desestimar la reclamación de daños, determinó que existían elementos constitutivos de traspaso de negocio en marcha, y que, además había una controversia real con relación al despido de los demandantes por International, viniendo obligada Airport a retener del precio de venta la cantidad correspondiente al pago de mesada, conforme lo dispone el Art. 6 de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185f. Consistente con dicha posición, y luego de celebrar juicio plenario, el tribunal de instancia emitió sentencia condenando, *solidariamente*, a Airport y a International al pago

de la cantidad correspondiente de mesada, según lo dispone la citada Ley Núm. 80.

Inconforme con lo resuelto, acudió ante este Foro el codemandado, Airport, señalando que erró el tribunal de instancia al:

1) ...resolver en la resolución del 26 de enero de 1990 y en la Sentencia que el Art. 6 de la Ley 80, 29 L.P.R.A. sec. 185[f,] le aplicaba a la peticionaria Airport Aviation Services, Inc. y que ésta venía obligada a retener del precio de venta la cantidad correspondiente al pago de mesada.
2) ...determinar en su [r]esolución del 26 de enero de 199[0] y en la sentencia que hubo un traspaso de negocio en marcha.
3) ...no hacer determinaciones de hecho en cuanto a que existía un convenio colectivo vigente el cual contenía una cláusula de quejas y agravios.
4) ...no sostener la defensa afirmativa levantada por la parte peticionaria relativo a que los querellantes estaban impedidos de reclamar por no agotar los remedios dispuestos en el convenio colectivo. Solicitud de revisión, págs. 6–7.

Expedimos el recurso radicado. En el día de hoy, la mayoría de los integrantes del Tribunal —*a nuestro juicio de manera totalmente errónea*— confirma en todas sus partes la sentencia recurrida.

## II

Antes de enfrentarnos a la controversia principal, y específica, que se plantea en el presente recurso —esto es, cómo aplica el Art. 6([2]) de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como la Ley de Despido o de la Mesada,([3]) a situaciones en las que el patrono predecesor, antes de vender los activos del negocio, despide sin justa causa a ciertos empleados y cuándo le corresponde al nuevo adquirente responder por los actos del predecesor de

---

([2]) 29 L.P.R.A. sec. 185f; disposición que se refiere al traspaso de un "negocio en marcha".

([3]) 29 L.P.R.A. secs. 185a–185m.

acuerdo con dicho artículo de ley— *recordemos* que en la interpretación de todo estatuto es necesario que tengamos presente la norma de hermenéutica, que asiduamente hemos reiterado, a los efectos de que: "[a]l interpretar una disposición específica de una ley, los tribunales deben siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarla y nuestra determinación debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener." *Chase Manhattan Bank v. Mun. de San Juan*, 126 D.P.R. 759, 766 (1990). Véanse: *Ind. Cortinera, Inc. v. P.R. Telephone Co.*, 132 D.P.R. 654 (1993); *Ramírez Lebrón v. Registrador*, 131 D.P.R. 76 (1992); *Pacheco v. Vargas, Alcaide*, 120 D.P.R. 404 (1988); R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes de Puerto Rico*, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, Vol. I, págs. 267–270.

La Asamblea Legislativa, al aprobar la Ley Núm. 80, ante, expresó en la exposición de motivos de la misma que el propósito de la ley es "garantizar que los empleados despedidos sin justa causa tengan derecho a recibir de su patrono una compensación correspondiente a un mes de sueldo más una compensación adicional progresivo". 1976 Leyes de Puerto Rico 267, 268. Antes de la aprobación de la Ley Núm. 80, ante, el Informe de la Comisión de Trabajo y Asuntos del Veterano sobre el P. del S. 1112, al reseñar el propósito del citado Artículo 6, expresó que éste "le da protección al derecho del trabajador a reclamar la indemnización por despido cuando ocurran traspasos reales o simulados en la empresa en que trabaja".(⁴)

---

(⁴) El P. del S. 1112 posteriormente fue aprobado sin enmiendas sustanciales y es lo que hoy conocemos como la Ley Núm. 80 de 30 de mayo de 1976. El Informe de la Comisión de Trabajo y Asuntos del Veterano presentó dos (2) informes: uno al Senado de Puerto Rico el 23 de abril de 1975 y otro a la Cámara de Representantes en abril de 1976. Los informes en su contenido son iguales y, debido a la falta de discusión en ambos cuerpos sobre la aprobación de la mencionada ley, hemos tenido que acudir a dichos informes, los cuales recomendaron la aprobación de la misma con enmiendas de estilo y no de contenido. Del expediente de la ley que custodia la Oficina de Archivo de Documentos nos informaron que el P. del S. 1112 fue aprobado por el Senado en tres (3) días y la Cámara, aunque lo retuvo un año, no realizó

La última enmienda hecha a la Ley Núm. 80, ante, fue realizada mediante la Ley Núm. 45 de 6 de agosto de 1991 (29 L.P.R.A. secs. 185a y 185k). En esta ocasión, la Asamblea Legislativa expresó en la exposición de motivos que "[l]a estabilidad del empleo y la seguridad de su tenencia constituyen materias de gran interés público en Puerto Rico" y que "[e]llo explica la existencia en nuestro ordenamiento jurídico de legislación como la Ley Núm. 80". 1991 Leyes de Puerto Rico 160–161. Además, en dicha enmienda el legislador enfatizó el carácter reparador que tiene la legislación protectora del trabajo.

No debe haber duda, *en consecuencia*, que la referida Ley Núm. 80 fue creada con el obvio propósito de brindarle a los trabajadores una protección especial en aquellas situaciones de despido injustificado. Como hemos expresado en variadas ocasiones, "como regla general, a un obrero o trabajador contratado sin tiempo determinado se le puede despedir por justa causa, sin causa o por causa injustificada y ... bajo estas circunstancias el único derecho que le asiste es el provisto por la Ley Núm. 80 de 30 de mayo de 1976 ...". *Arroyo v. Rattan Specialties, Inc.*, 117 D.P.R. 35, 65 (1986). Véanse: *Vélez Rodríguez v. Pueblo Int'l, Inc.*, 135 D.P.R. 500 (1994); *Porto y Siurano v. Bentley P.R., Inc.*, 132 D.P.R. 331 (1992). *La Ley Núm. 80, ante, no prohíbe el despido, per se, sino que sanciona el despido injustificado.* Dicha ley provee como *único* remedio la indemnización al empleado despedido equivalente a un mes de sueldo más una semana de compensación por cada año de servicio al patrono. 29 L.P.R.A. sec. 185a.

### III

Por otro lado, el mencionado Art. 6 de la Ley Núm. 80, ante, crea unas obligaciones, tanto para el patrono predecesor como para el nuevo adquirente, *cuando ocurre un*

---

cambio alguno que no fuera estampar la firma.

*traspaso de negocio en marcha.*([5]) La frase "negocio en marcha" podemos definirla como la transferencia de un patrono a otro sin interrupción o cese en las operaciones del negocio o industria.([6]) Dispone el mencionado Art. 6 que:

> En el caso del traspaso de un negocio en marcha, si el nuevo adquirente continúa utilizando los servicios de los empleados que estaban trabajando con el anterior dueño, se les acreditará a éstos el tiempo que lleven trabajando en el negocio bajo anteriores dueños. *En caso de que el nuevo adquirente opte por no continuar con los servicios de todos o algunos de los empleados y no advenga en su consecuencia patrono de éstos el anterior patrono responderá por la indemnización provista por las secs. 185a a 185m de este título el comprador deberá retener la cantidad correspondiente del precio de venta convenido respecto al negocio.* En caso de que los despida sin justa causa *después del traspaso,* el nuevo dueño responderá por cualquier beneficio que bajo las secs. 185a a 185m de este título pueda tener el empleado que quede cesante, estableciéndose además un gravamen sobre el negocio vendido para responder del monto de la reclamación. (Énfasis suplido.) 29 L.P.R.A. sec. 185f.

Examinemos, pues, si los obreros querellantes tienen *causa de acción* contra Airport Aviation Services al amparo de las disposiciones del Art. 6 de la Ley Núm. 80, ante. *Contestamos en la negativa.* La citada disposición de la Ley Núm. 80, ante, contempla *dos* (2) momentos diferentes en la relación patrono-empleado cuando se produce un traspaso de negocio en marcha. En *primer* lugar, *antes de llevarse a cabo el traspaso, el nuevo adquirente tiene la opción de continuar o no con la fuerza trabajadora del negocio.* En aquellos casos en que el nuevo adquirente decida *no* retener a todos o algunos de los empleados del patrono original, *será el dueño o patrono original el responsable por la*

---

([5]) A esos efectos, véase R. Delgado Zayas, *Manual informativo de legislación protectora del trabajo,* San Juan, [s. ed.], 1989.

([6]) En *Texaco P.R., Inc. v. Peñagarícano, Admor.,* 94 D.P.R. 49, 52 (1967), establecimos el significado de "negocio en marcha" a la luz de la Ley de Alquileres Razonables. En dicho caso expresamos que "[a] nuestro juicio, basta con [sic] que con anterioridad al arrendamiento que motiva la controversia, el arrendador o uno de sus antecesores en título lo operase aunque luego el negocio fuese objeto de mejoras sustanciales ... *siempre que no hubiese dejado de operarse".* (Énfasis suplido.)

*indemnización que provee la Ley Núm. 80*, ante. El nuevo adquirente, por su parte, *no* adviene patrono de aquellos empleados no retenidos, *ya que éstos nunca llegan a formar parte de la fuerza trabajadora del comprador una vez se consuma el traspaso del negocio en marcha.* El Departamento del Trabajo y Recursos Humanos, al interpretar el referido Art. 6, ha expresado que "[e]n *este* caso el nuevo dueño, por disposición específica de ley, deberá retener del precio de venta del negocio la suma a la que los empleados del anterior dueño, que no contrate, tengan derecho bajo la Ley [Núm.] 80, pago por el cual será per[s]onalmente responsable". *Guía para la interpretación y aplicación de la Ley Núm. 80 aprobada el día 30 de mayo de 1976*, San Juan, Departamento del Trabajo y Recursos Humanos, pág. 46. Esto impone al nuevo comprador la responsabilidad de asegurarse que el anterior dueño haya efectuado el pago de la suma correspondiente a los empleados no retenidos luego del traspaso de negocio ya que, de lo contrario, tendría que retener dicha suma del precio de venta del negocio y respondería personalmente a dichos empleados. Íd.

La *segunda modalidad* que contempla el Art. 6 de la Ley Núm. 80, ante, se refiere a la decisión del adquirente de retener a todos o algunos empleados del dueño anterior después de llevarse a cabo el traspaso de negocio en marcha. En dicha eventualidad, el nuevo dueño es el *único* responsable según la Ley Núm. 80, ante, de los empleados que él retuvo y *luego* despidió sin justa causa, ya que éstos forman parte de la fuerza trabajadora de éste. Para computar la mesada de estos empleados, se toma en consideración el tiempo trabajado por éstos con el patrono anterior más el tiempo trabajado con el nuevo dueño y, luego de efectuarse el computo de dicha mesada, se establece un gravamen sobre el negocio del nuevo adquirente.[7]

---

[7] El Art. 6 de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185f, es interpretado por 2 *Larson, Unjust Dismissal* Sec. 10.40[1][a],

A base de lo anteriormente expresado, somos del criterio que parece ser obvio que los obreros demandantes y recurridos *no* tienen causa de acción alguna contra el recurrente Airport.

.

## IV

Ahora bien, con relación al hecho de la sustitución de un patrono por otro, y para determinar si ha ocurrido un "traspaso de negocio en marcha", resolvimos en *J.R.T. v. Coop. Azucarera*, 98 D.P.R. 314, 322 (1970), que "se requiere una similaridad sustancial en la operación y una continuidad en la identidad de la empresa antes y después del cambio para que se estime que el nuevo patrono deberá asumir obligaciones contraídas por el anterior". Dicho caso estableció varios *factores* a ser considerados al determinar la presencia de la figura del patrono sucesor. *Debido a la similitud existente entre la doctrina del "patrono sucesor" y el "traspaso de negocio en marcha", los factores determinantes del primero resultan ser de utilidad para llevar a cabo el análisis del Art. 6 de la Ley Núm. 80*, ante.[8] Los factores fundamentales a ser considerados en el análisis *son la similaridad y continuidad de la actividad*. Para determinar la presencia de estos *dos (2) factores fundamentales* hay que identificar *las circunstancias siguientes*: "(1) la existencia de una continuación sustancial de la misma actividad de negocios; (2) la utilización de la misma planta

---

págs. 10-258.92–10-258.93 (1994), de la forma siguiente:

"A subsection of the statute governs the situation in which there is a transfer of an ongoing business, and the acquirer of the business chooses either to continue to use the services of the employees who worked for the former owner or to discontinue the services of such employees. The section provides that if the acquirer chooses not to retain the services of an employee, then the former employer is liable for the compensation provided under the statute. If the acquirer chooses instead to retain the employee's services and discharges that employee without good cause after the transfer, the acquirer becomes liable for the compensation." (Escolios omitidos.)

[8] A estos efectos, véase R. Delgado Zayas, *Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño*, San Juan, Pubs. Laborales, 1989, pág. 123.

para las operaciones; (3) el empleo de la misma o sustancialmente la misma fuerza obrera; (4) la conservación del mismo personal de supervisión; (5) la utilización del mismo equipo y maquinaria y el empleo de los mismos métodos de producción; (6) la producción de los mismos productos y la prestación de los mismos servicios; (7) la retención del mismo nombre; y (8) la cooperación del negocio durante el período de transición." (Escolios omitidos.) *J.R.T. v. Coop. Azucarera,* ante, págs. 323–325. Un requisito indispensable para considerar un traspaso de negocio en marcha es que no pueden haber transcurrido seis (6) meses desde que se efectuó el traspaso y el nuevo adquirente comenzó a operar el negocio.[9]

Este Tribunal ha adoptado la figura del "patrono sucesor" (*successorship*) en aquellas situaciones en las que ocurre una venta o transferencia de activos o reorganización de un negocio y surgen diferencias entre el nuevo patrono y los derechos de los empleados.[10] De existir similaridad sustancial en las operaciones de la empresa y continuidad en la identidad antes y después del cambio, el nuevo pa-

---

[9] R. Delgado Zayas, *Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño,* San Juan, Pubs. Laborales, 1989, pág. 123.

[10] La doctrina del "patrono sucesor" fue desarrollada por el Tribunal Supremo federal y los otros foros federales en aquellos casos en que habiendo un convenio colectivo entre el patrono anterior y los empleados, el nuevo patrono no quería reconocerlo. Mediante la doctrina se le impuso la obligación al patrono sucesor de respetar las obligaciones respecto a arbitraje del convenio colectivo. Véanse: *John Wiley & Sons v. Livingston,* 376 U.S. 543 (1964); *Wackenhut Corp. v. International U., United Plant Guard W.,* 332 F.2d 543 (9no Cir. 1964); *NLRB v. Burns Security Services,* 406 U.S. 272 (1972). La doctrina fue ampliada posteriormente en cuanto a la responsabilidad del patrono sucesor por las prácticas ilícitas del predecesor. Véanse: *Golden State Bottering Co. v. NLRB,* 414 U.S. 168 (1973); *United States Pipe and Foundry Company v. N.L.R.B.,* 398 F.2d 544 (5to Cir. 1968); *N.L.R.B. v. St. Marys Foundry Co.,* 860 F.2d 679 (6to Cir. 1988); *N.L.R.B. v. South Harlan Coal, Inc.,* 844 F.2d 380 (6to Cir. 1988). Recientemente la doctrina ha sido extendida, imponiendo responsabilidad al patrono sucesor por los despidos discriminatorios de su predecesor, específicamente los casos bajo el Título VII del *Civil Rights Act de 1964,* 42 U.S.C. sec. 2000 *et seq.* Véanse: *Equal Emp. OP. Com'm v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086 (6to Cir. 1974); *Slack v. Havens,* 522 F.2d 1091 (9no Cir. 1975); *Bates v. Pacific Maritime Ass'n,* 744 F.2d 705 (9no Cir. 1984); *Musikiwamba v. Essi, Inc.,* 760 F.2d 740 (7mo Cir. 1985); *Criswell v. Delta Air Lines, Inc.,* 869 F.2d 449 (9no Cir. 1989); *E.E.O.C. v. Puerto Rico Job Corps.,* 729 F. Supp. 208 (D. P.R. 1990).

trono según esta doctrina puede ser responsable de las obligaciones laborales del predecesor. *Bruno López v. Motorplan, Inc. y otros*, 134 D.P.R. 111 (1993); *J.R.T. v. Asoc. C. Playa Azul I*, 117 D.P.R. 20, 29 (1986); *J.R.T. v. Coop. Azucarera*, ante, pág. 322; *J.R.T. v. Club Náutico*, 97 D.P.R. 386, 397–400 (1969); *Beaunit of Puerto Rico v. J.R.T.*, 93 D.P.R. 509 (1966); *J.R.T. v. Freyre*, 87 D.P.R. 891 (1963); D. Fernández Quiñones y C. Romany, *Derecho Laboral: Casos y Materiales*, Río Piedras, Ed. U.P.R., 1987, T. II, págs. 1265–1324.

La doctrina del "patrono sucesor" ha tenido en Puerto Rico una evolución paralela al desarrollo doctrinario de la misma en los tribunales federales.[11] En los casos *J.R.T. v. Coop. Azucarera*, ante, y *Beaunit of Puerto Rico v. J.R.T.*, ante, acogimos dicha doctrina para darle validez a convenios colectivos adoptados por el patrono predecesor. Igualmente aplicamos la doctrina en aquellos casos en los que el nuevo patrono es responsable por las prácticas ilícitas del patrono anterior. *J.R.T. v. Club Náutico*, ante. Recientemente, en *Bruno López v. Motorplan, Inc. y otros*, ante, adoptamos la doctrina del "patrono sucesor" al ámbito del despido discriminatorio, y expresamos la necesidad de examinar las circunstancias particulares en cada caso para imponerle responsabilidad al patrono sucesor.

En este último caso establecimos unos *parámetros* para aplicar la referida doctrina. Expresamos que al "determinar la responsabilidad del patrono sucesor es indispensable sopesar varias cuestiones entre las cuales cabe destacar: (1) *si el nuevo patrono conocía de antemano la reclamación del empleado contra su predecesor*; (2) la relativa capacidad de cada uno de los patronos para satisfacer adecuadamente la reclamación del empleado, de ser ésta válida, y (3) el beneficio que hayan podido o puedan derivar

---

[11] Es pertinente señalar que recientemente el Tribunal de Distrito Federal para el Distrito de Puerto Rico adoptó la doctrina del patrono sucesor en el caso *E.E.O.C. v. Puerto Rico Job Corps.*, ante.

respectivamente cada uno de los patronos por la acción que se impugna". *Bruno López v. Motorplan, Inc. y otros*, ante, pág. 122. Véase, además, *E.E.O.C. v. Puerto Rico Job Corps.*, 729 F. Supp. 208, 218–219 (D. P.R. 1990). Con relación a estos parámetros, el tribunal federal expresó en *E.E.O.C. v. Puerto Rico Job Corps.*, ante, págs. 218–219, que:

> ... "No one of these factors is controlling; the court must look at all of them along with any others that present themselves in the case before it, and it must make its decision by balancing the interests of the plaintiff and the national policy."

Por otro lado, *y de forma persuasiva*, debemos señalar que el Tribunal de Distrito Federal para el Distrito de Puerto Rico tuvo ante su consideración una controversia referente a la interpretación del referido Art. 6 de la Ley Núm. 80, ante. En *Marti v. Chevron U.S.A., Inc.*, 772 F. Supp. 700, 705–706 (D. P.R. 1991), dicho foro expresó:

> ... In the case of a transfer of an ongoing business, *the statute seeks to place the burden of compliance on the employer who causes the discharge.* Where the employee continues in the service of the purchaser, it is the latter who is liable if the employee is subsecuently discharged. If the purchaser chooses not to hire the employee, the former employer is liable. ...
> ... To find for plaintiff, this court would have to extend the reach of the statute far beyond its intended purpose which is to soften somewhat the effects of sudden and unexpected unemployment. (Énfasis suplido.)

Analicemos los hechos del caso de autos a la luz de lo anteriormente expuesto.

## V

De entrada, contestamos la interrogante de si erró el tribunal de instancia, como alega la parte recurrente, al concluir que efectivamente hubo en el presente caso un "traspaso de negocio en marcha". Entendemos que dicho

error *no* fue cometido; esto es, estamos de acuerdo, *en este aspecto*, con la mayoría.

Sabido es que, como *regla general*, este Tribunal *no* intervendrá con la apreciación de la prueba hecha por el juzgador de los hechos, salvo demostración de error manifiesto, pasión, perjuicio o parcialidad. *Rodríguez Oyola v. Machado Díaz*, 136 D.P.R. 250 (1994); *Selosse v. Fund. Educ. Ana G. Méndez*, 122 D.P.R. 534 (1988).[12] En el caso de autos las determinaciones de hecho adoptadas por el tribunal de instancia nos merecen deferencia y por lo tanto *no* intervendremos con éstas. *Veamos por qué.*

Al examinar un caso como el de autos, es conveniente tomar en consideración los factores y circunstancias que fueron enumerados en *J.R.T. v. Coop. Azucarera*, ante, págs. 323–325. Entendemos que en el caso ante nos, efectivamente existía la similitud y continuidad sustancial necesaria para concluir que se había llevado a cabo un "traspaso de negocio en marcha", ya que Airport adquirió de International, no sólo sus activos y deudas, sino que, luego de la adquisición, continuó llevando a cabo actividades idénticas, utilizando para esto el equipo y maquinaria de International. Además, existe prueba incontrovertida demostrativa de que Airport retuvo básicamente la misma fuerza trabajadora, prestó los mismos servicios que International, utilizó el mismo mostrador que aquella y, lo más importante, operó el negocio durante un período de transición, anterior al traspaso, efectuando los pagos de la nómina de empleados mucho antes de concretarse dicho traspaso. *En resumen*, de acuerdo a las circunstancias particulares que hemos examinado, es mandatorio concluir

---

[12] A estos efectos, véanse: *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 D.P.R. 203 (1994); *Rodríguez Amadeo v. Santiago Torres*, 133 D.P.R. 785 (1993); *Gallardo v. Petitón y V.T.N., Inc.*, 132 D.P.R. 39 (1992); *Pérez v. Col. Cirujanos Dentistas de P.R.*, 131 D.P.R. 545 (1992); *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8 (1987); *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172 (1985); *Pérez Cruz v. Hosp. La Concepción*, 115 D.P.R. 721 (1984).

que en el caso de autos están presentes los elementos constitutivos de un "traspaso de negocio en marcha".

## VI

*Ello no obstante, y a la luz de la prueba presentada a nivel de instancia, resulta altamente cuestionable e imposible de sostener la determinación del foro de instancia —y de la Mayoría— de responsabilizar al nuevo adquirente, Airport, por el despido alegadamente injustificado de los dos (2) recurridos, llevado a cabo el mismo por el patrono original, esto es, la International.*

Como expresáramos anteriormente, el citado Art. 6 impone responsabilidad —ya sea al patrono predecesor o al nuevo adquirente— por la cesantía o despido de empleados, *dependiendo dicha determinación del momento en que sobrevino el traspaso del negocio en marcha y de la fecha del despido.* En el presente caso, el despido alegadamente injustificado se llevó a cabo *con anterioridad* a la venta del negocio. *Esto es, al ocurrir el "traspaso del negocio en marcha", los recurridos ya no eran miembros de la fuerza laboral de la empresa por lo que nunca fueron empleados de Airport. Por otro lado, no hay prueba alguna que señale, o demuestre, que Airport tenía conocimiento de que esos despidos hubieran sido llevados a cabo.*

A pesar de que nos enfrentamos en el presente caso a un estatuto de carácter reparador, ante los hechos del caso de autos, *no podemos darle al mismo una interpretación tan liberal como para responsabilizar a Airport por dichos despidos.* Por los fundamentos antes expuestos, dictaríamos sentencia *modificatoria* de la emitida por el tribunal de instancia —a los efectos de *exonerar de responsabilidad solidaria,* por los despidos, a Airport— y, así modificada, *confirmaríamos la misma en cuanto a la responsabilidad decretada, en relación con dicho despido, de International.*

## VII

En vista del "fundamento" en que se ampara la opinión mayoritaria emitida para sostener la posición contraria —esto es, el del "ay bendito"— *estimamos que ésta es una decisión lamentable y peligrosa, por lo dañina que ésta puede resultar en el futuro.* La misma —de manera errónea e innecesaria— *no sólo* sitúa en posición precaria a aquellos patronos que en el futuro interesen comprar negocios existentes, *sino que tendrá el efecto nocivo de desalentar el que ello suceda.*

Irónicamente, esta decisión causará un perjuicio incalculable a la clase trabajadora de nuestro País, las personas que, *precisamente*, interesa proteger la citada Ley Núm. 80 de 1976. Ello así ya que, de ahora en adelante, el que interese comprar un negocio esperará a que el mismo sea cerrado, y que todos sus empleados hayan sido dejados cesantes, para luego comprar "lo que quede".

*Por otro lado*, el resultado erróneo al que llega la mayoría en el presente caso tampoco puede ser sostenido por el *igualmente erróneo* fundamento que se aduce en la Opinión concurrente emitida por el Juez Asociado Señor Fuster Berlingeri. Conforme dicha ponencia, se le puede "imputar" conocimiento, de los despidos decretados, a la recurrente Airport por razón del simple hecho de que los obreros despedidos se habían querellado a la unión obrera que representaba los empleados del "patrono predecesor".

El obstáculo con que se confronta dicho razonamiento lo es que, *conforme la prueba desfilada a nivel de instancia*, los obreros despedidos testificaron que la referida unión se *cruzó* de brazos y *no* hizo gestión alguna en defensa de sus derechos. En vista a ello, *cabe preguntarse* si resulta lógico, y procedente, concluir que el patrono sucesor, Airport, "tuvo que tener" conocimiento de la querella, como sostiene la opinión concurrente, o, *por el contrario*, resulta ser *más*

lógico, y procedente, concluir que, si la unión no hizo nada, *no* hay razón alguna para concluir que Airport en algún momento obtuvo conocimiento de dicha situación antes de comprar los activos de International; *sobre todo, cuando consideramos el hecho de que no se trata de despidos masivos de empleados, y sí del despido de dos (2) empleados únicamente, lo cual no causa mayor revuelo en una compañía que tiene muchos empleados.* Como podemos notar, este razonamiento *no sólo* es erróneo e ilógico *sino que* el mismo, inclusive, resulta contrario a lo expresado en la opinión mayoritaria. En la misma se acepta que "no hay prueba de que Airport tuviera conocimiento de las reclamaciones de los empleados ...". Opinión mayoritaria, pág. 354.

*En conclusión,* la decisión mayoritaria de erróneamente responsabilizar a Airport por los dos (2) despidos ocurridos *no* se sostiene bajo ninguno de los dos (2) argumentos, o razonamientos, que ofrece la mayoría de los integrantes del Tribunal en apoyo de la misma. *Decisiones como éstas le hacen un gran daño a Puerto Rico. Las mismas "ahuyentan", aun más, a los inversionistas que piensan en la posibilidad de establecer negocios en nuestra Isla, privándose así a nuestros conciudadanos de buenos y mejores empleos.*

Es por ello que disentimos.